FIRST NATIONAL BANK OF NEVADA AND NEVADA BANK OF COMMERCE, APPELLANTS, v. DEAN WITTER & CO., RESPONDENT.

No. 5433

May 1, 1968 440 P.2d 391

304 

*Gray, Horton and Hill* and *Goldwater, Taber, Hill and Mortimer,* all of Reno, for Appellants.

*Vargas, Bartlett & Dixon* and *Robert W. Marshall,* of Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a summary judgment granted in favor of the respondent, Dean Witter & Co., against First National Bank of Nevada. First National Bank joined the Nevada Bank of Commerce as a third-party defendant. Nevada Bank of Commerce also moved for a summary judgment in its favor against the respondent. This motion was denied. Both banks appeal from the judgment.

Respondent is a stock brokerage firm doing business in Reno. It maintained a commercial checking account in First National Bank. First National Bank was permitted to pay on checks drawn against the account by respondent only as directed by authorized persons of the respondent. Between August 1962 and July 1964 certain checks were authorized by respondent to be drawn on this account. These checks were drawn and First National Bank did pay them. Customers of the respondent were named as payees on the checks. Respondent's authorized employees who signed the checks at the request of respondent's account executive, Lee Smith, intended that these customers receive the funds represented by the checks. Ostensibly, Smith was acting at the request of the customers. The payees' names were falsely indorsed by Smith and then cashed by him upon his indorsement, which was added below that of the forged payee.

Smith cashed these checks at the Nevada Bank of Commerce. The checks were stamped "Prior endorsements guaranteed" by the Nevada Bank of Commerce and then presented to the First National Bank for payment. First National Bank relied upon this guarantee and honored the checks.

The canceled checks were then sent by First National Bank to the office of respondent in San Francisco, California. At this office there were on file the signatures of the respondent's customers. Respondent apparently checked the signatures of its customers with indorsements on its returned checks. After inquiry of one of the above payees, this system was used to detect the present fraud.

Smith's family has given restitution to the respondent in the sum of $4,644.83. The amount of $17,355.17 is herein sought to be recovered.

Prior to the hiring of Smith, respondent had thoroughly investigated his background and found nothing suspicious in it.

The primary issue for our determination is who should bear the loss of the above-described fraud. A summary judgment can be granted only if there is no genuine issue as to any material fact remaining to be tried. NRCP 56. The third-party defendant, Nevada Bank of Commerce, has properly raised certain defenses, NRCP 14(a), which must be considered.

1. Were the checks order or bearer instruments?
2. Is the respondent precluded from recovery?

1. Appellants argue that the checks here in question should be considered either (1) bearer instruments requiring no indorsement or (2) valid because the indorsements were effective. If the checks were bearer instruments, no indorsement was required, and the forged instrument would be of no consequence. Such a holding, it is correctly argued, would conform to the result preferred by the newly enacted law under the Uniform Commercial Code, NRS 104.3405, which became effective in Nevada on March 1, 1967. It would also conform to the result preferred by the amended Negotiable Instruments Law provision adopted in many states. See Brady on Bank Checks § 15.24, at 540 (Bailey 3d ed. 1962).

This court, however, is bound to apply the law in effect at the time the transactions took place. NRS 104.1110. The law then in effect, NRS 92.016, provided in relevant part:

"The instrument is payable to bearer:

\* \* \* \* \*

"3. When it is payable to the order of a fictitious or nonexisting person, and *such fact was known to the person making it so payable;* \* \* \*."

NRS 92.016 is part of Nevada's Negotiable Instruments Law. The well settled rule under the Negotiable Instruments Law is that the checks here in question are considered order instruments. It is only when the maker of the check knows that the payee is fictitious or when the maker intends that the payee have no interest in the check, that the instrument is considered made to a fictitious payee. Home Indem. Co. v. State Bank, 8 N.W.2d 757 (Iowa 1943); Los Angeles Inv. Co. v. Home Sav. Bank, 182 P. 293 (Cal. 1919); Shipman v. Bank of State, 27 N.E. 371 (N.Y. 1891).

In the present case it is clear that the officers who executed the checks on behalf of the respondent intended that the

payees, who were not fictitious persons but were actual customers of the respondent, receive the payment ordered.

It is also clear that a principal will not be charged with the knowledge of an agent under circumstances such as this, where the knowledge is adverse to the company and naturally would not be communicated to it. Los Angeles Inv. Co. v. Home Sav. Bank, supra.

Appellants have not cited one case which supports their position that the checks are bearer instruments. Under Nevada law at the time the transactions took place the checks must be considered order instruments.

2. NRS 92.030 provided:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, *unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority.*"

This court has explained the meaning of this provision in Federal Ins. Co. v. Toiyabe Supply, 82 Nev. 14, at 17–18 (1966):

"NRS 92.030 is identical to Sec. 23 of the Uniform Negotiable Instruments Law. Many cases have been decided under that section. It is well established that it is the absolute duty of a bank honoring a check to pay only to that payee and no amount of care to avoid error will protect it from liability if it pays to the wrong person. * * * Because of NIL § 23, the collecting bank never acquired title to the checks nor acquired a right to receive payment thereon from the drawee. And when a check is presented by a third person with the alleged indorsement of the payee, the paying bank must ascertain at its peril whether the indorsement is forged and the genuineness of the last indorsement on a check does not relieve such bank from the duty of looking to the genuineness of preceding indorsements. Home Indemnity Co. v. State Bank of Fort Dodge, 8 N.W.2d 757 (Iowa 1943).

"'* * * One taking a check made payable to a corporation must suffer the consequences if the agent indorsing it is without authority unless the corporation is negligent or otherwise precluded by its conduct from setting up such lack of authority. * * *'"

Appellants cite the following general proposition of law from Michie on Banks & Banking, vol. 5B, ch. 9, § 284, at 136–137 (1950): "The depositor's duty to examine his account and canceled checks without unreasonable delay, and report errors, does not extend to the examination of the payees' indorsements on checks, *unless suspicious circumstances exist putting him on inquiry.*"

Appellants claim that the appearance of employee Smith's name below that of the payee is such a suspicious circumstance. That this argument is incorrect is pointed out by the very next sentence in Michie: "And the rule applies although the payee's indorsement was forged by an employee of the depositor."

The error of appellants' argument is that the claimed circumstance giving rise to the duty to examine the indorsements can only be discovered by an examination of the indorsements. Evidence disclosed only by such an examination cannot give rise to a duty to make the examination.

The contention that the employee's signature below that of the payee constitutes a suspicious circumstance putting the depositor on inquiry is without merit. Such a sequence of indorsements is a common occurrence in employee fraud cases and does not alter the general rule. See Coffin v. Fidelity-Phila. Trust Co., 97 A.2d 857 (Pa. 1953); Los Angeles Inv. Co. v. Home Sav. Bank, supra; Annot., 99 A.L.R. 439 (1935).

Appellants also contend that the fact that respondent had the signatures of the payees on file and did not detect the forgeries, constituted negligence or at least raised a jury question. There is some authority which gives this circumstance a certain amount of weight in allowing the question of negligence to become a jury question. See cases discussed in Annot., 39 A.L.R.2d 641, 655, § 10 (1955). It must be noted that this factor is but one among several circumstances considered by such cases. A proper statement of the law is found in Brady, supra, § 15.27, at 551:

"In a few instances there has been an exception to the general rule, as where the depositor has the signatures of the payee *and where there are other facts indicating possible negligence on the part of the depositor.*" See also Michie, supra, § 283, at 121.

Standing alone, as it does in this case, the fact that respondent had on file the payees' signatures does not raise a jury question. The fact that the respondent had a system for reviewing the indorsements does not give rise to a duty to make such a review. Los Angeles Inv. Co. v. Home Sav. Bank, supra.

Under the facts of this case, respondent had no duty to examine the indorsements. There were no suspicious circumstances putting the respondent on inquiry.

The judgment is affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.