## FEDERAL INSURANCE COMPANY, Appellant, v. TOIYABE SUPPLY COMPANY AND NEVADA BANK OF COMMERCE, Respondents.

No. 4925

January 14, 1966        409 P.2d 623

[Rehearing denied February 10, 1966]

*Vargas, Dillon, Bartlett & Dixon,* and *Alex. A. Garroway,* of Reno, for Appellant.

*Gray, Horton and Hill,* of Reno, for Respondents.

## OPINION

By the Court, ZENOFF, D. J.:

Appellant appeals from an order granting summary judgment in favor of respondents.

Frank N. Kneeshaw was an employee of Basic, Inc., assigned principally to duties connected with the operation of Valley Power Company and Townsite Development Company (wholly owned subsidiaries of Basic), which were conducted in one office at Gabbs, Nevada, near the general office of Basic. Among other duties, Kneeshaw had charge of billings for power and the collection of all charges therefor and the collection of money payable to Townsite; he kept the books of both Valley Power and Townsite; he was authorized to make deposits to the respective accounts of those companies in Nevada Bank of Commerce which he did by rubber stamp or handwritten indorsement, "For Deposit Only," followed by the name of the company.

He had no separate or individual authority to withdraw from the bank account of Valley Power; he had no authority to withdraw from the Townsite account except with a joint signature of another person.

Toiyabe Supply Company operated a general store in Gabbs with a gambling casino.

Kneeshaw was employed by Basic from August 1956 to April 1, 1961 when he committed suicide. During the period of his employment, he frequently took to Toiyabe checks received by him payable to Valley Power or Townsite for obligations owing by third parties, and drawn on various banks. At times he wrote on the backs of some of those checks, in his own handwriting, the name of the payee and his own name, for example, "Valley Power Co. F. N. Kneeshaw." Toiyabe gave Kneeshaw, in exchange for the indorsed checks either cash or a requested amount of cash and the balance by check of Toiyabe with either Valley Power or Townsite as payee. Kneeshaw deposited those checks from Toiyabe to the accounts of his employer.

Checks totalling $38,927.15 have been recovered which show that Kneeshaw negotiated them with Toiyabe by using the aforementioned indorsement. It is also stipulated that some checks given by Toiyabe to Kneeshaw, payable to Valley Power or Townsite, in exchange for checks and/or cash, were later properly deposited by Kneeshaw to the accounts of the respective payees in the total amount of $12,646.51. Thus, a total loss of $26,280.64 is claimed.

All the checks accepted by Toiyabe from Kneeshaw were indorsed by it and deposited in its account with Nevada Bank of Commerce, and that bank collected them from the drawee banks and gave credit therefor to the Toiyabe account.

Federal Insurance Company was surety on a bond to Basic "and any subsidiary corporation or corporations now existing or hereafter created, as their respective interests may appear" to pay and make good all losses of money, securities and other property through any fraudulent or dishonest act or acts, including embezzlement, forgery, misappropriation, wrongful abstraction or wilful misapplication, committed by any one of the

employees acting alone or in collusion with others. By reason thereof, Federal has paid to Valley Power $26,-703.13 and Townsite $15,017.19, a total of $41,720.32.

It was further stipulated that no person in authority with Basic, Valley Power, or Townsite had any actual knowledge of those actions by Kneeshaw before he committed suicide.

1. In Valley Power Co. v. Toiyabe, 80 Nev. 458, 396 P.2d 137 (1964), this Court stated, "Having paid the assureds in full for their claimed losses, the insurer was subrogated, by operation of law, to the rights, if any, which the assureds may have had against the defendants before such payments were made."

This appeal seeks to determine the subrogation rights of appellant surety company against the respondents Bank and Toiyabe.

First, it must be determined whether Valley Power and Townsite had any rights against respondents. We will first consider rights against respondent Bank.

NRS 92.030 provides that "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

We find the transactions in the instant case to be within the purview of that statute. Here, an unauthorized indorsement was made and eventually the checks were deposited with respondent bank which had signature cards on file showing the limitation on the defalcating employee's authority to withdraw moneys from the corporate accounts.

NRS 92.030 is identical to Sec. 23 of the Uniform Negotiable Instruments Law. Many cases have been decided under that section. It is well established that it is the absolute duty of a bank honoring a check to pay only to that payee and no amount of care to avoid error

will protect it from liability if it pays to the wrong person. Provident Trust Co. v. Interboro Bank & Trust Co., 133 A.2d 515 (Pa. 1957). Because of NIL § 23, the collecting bank never acquired title to the checks nor acquired a right to receive payment thereon from the drawee. And when a check is presented by a third person with the alleged indorsement of the payee, the paying bank must ascertain at its peril whether the indorsement is forged and the genuineness of the last indorsement on a check does not relieve such bank from the duty of looking to the genuineness of preceding indorsements. Home Indemnity Co. v. State Bank of Fort Dodge, 8 N.W.2d 757 (Iowa 1943).

An employee authorized to make a restricted indorsement of checks for deposit is not authorized to make a general indorsement. One taking a check made payable to a corporation must suffer the consequences if the agent indorsing it is without authority unless the corporation is negligent or otherwise precluded by its conduct from setting up such lack of authority. One with authority to indorse checks, "For Deposit Only," who indorses generally, is without authority within the meaning of the NIL. Standard Steam Specialty Co. v. Corn Exchange Bank, 116 N.E. 386 (N.Y. 1917).

Respondent bank stamped on the back of each check, "Prior endorsements guaranteed." "The guaranty of prior endorsements is required by clearing houses generally in the orderly conduct of banking business in order that the collecting bank may be held liable by the drawee bank for the validity of all prior endorsements. Such a guaranty is a business risk assumed by the collecting bank for the benefit of subsequent endorsers and especially for the benefit of the drawee bank, which ordinarily has no way of ascertaining whether the indorsements are genuine and which accordingly relies upon the guaranty in honoring checks presented to it. It is a risk undertaken by the collecting bank in the usual course of business with full knowledge of its potential liability and possible ensuing loss." Standard

Acc. Ins. Co. v. Pellecchia, 104 A.2d 288 (N.J. 1954). We believe, in this case, that that guaranty inured to the benefit of the payees, for their subrogee has chosen to bring this action rather than sue the drawee banks, and the payee has even fewer ways of ascertaining genuineness of indorsements—he never sees the cancelled checks.

The trial court in its pretrial order in the instant case made a finding of fact that Kneeshaw only had authority to indorse checks for deposit. There is no evidence in the record to indicate that Valley Power and Townsite conducted themselves in such a manner to lead the bank to believe Kneeshaw had authority to indorse generally, in fact, signature cards were on file negating any such authority. Therefore, we find that the indorsements in question here were without authority, that the respondent bank took the checks at its peril and guaranteed prior indorsements, and that it is liable to the payees (Valley Power and Townsite) for paying on the ineffective instrument.

2. We must now determine the rights of the appellate surety as subrogee to the rights of Valley Power and Townsite.

Respondents submit that a compensated surety, when maintaining an action against a collecting bank, stands in different stead than Valley Power and Townsite. The authority cited for this proposition is Meyers v. Bank of America, 77 P.2d 1084 (Cal. 1938), and U.S. Fidelity & Guaranty Co. v. First Nat. Bank in Dallas, Tex., 172 F.2d 258 (5th Cir. 1949), and similar cases applying the "weighing of the equities" doctrine.

This doctrine can be explained by the following quotation from the Meyers decision: "In equity it cannot be said that the satisfaction by the bonding company of its primary liability should entitle it to recover against the bank upon a totally different liability. The bank, not being a wrongdoer, but in the ordinary course of banking business, paid money upon these checks, the genuineness of which it had no reason to doubt, and from which it received no benefits. The primary cause of the loss was the forgeries committed by the employee, whose integrity was at least impliedly vouched for by his

employer to the bank. We cannot say that as between the bank and the paid indemnitor, the bank should stand the loss. * * * Our conclusion is that since the bonding company had no superior equities, it was not entitled to be subrogated to any claim plaintiff might have had against the bank." Id. at 1089.

Some significance is given to the fact that the surety has been paid to assume a risk and therefore has fewer equities than the assured.

Respondents thus contend that summary judgment was proper in the instant case since Federal had no superior equities and could not, therefore, prevail as subrogee of Valley Power and Townsite.

Appellant, on the other hand, argues that the surety should be given the benefit of the contractual obligation against the respondents by allowing subrogation and cites Standard Acc. Ins. Co. v. Pellecchia, supra. "It is objected that such a recovery by the surety constitutes a 'windfall' in that in the event of such recovery the surety suffers no loss on its surety bond although it has been paid premiums by the insured to reimburse it against just such a loss, as here. This argument loses sight of two fundamental facts: first, that even if the surety recovers against the third party on subrogation it still has been put to the expense of paying agent's commissions on the writing of its bond, to the necessity of investigating the insured's claim and of settling or litigating it, and, second, that the amounts of recoveries by subrogation are taken into consideration in arriving at the amount of premiums to be charged for surety bonds." Id. at 302.

Admittedly, there is a split of authority concerning the rights of a compensated surety as subrogee. We disapprove of the "weighing of the equities" doctrine and find no significance in the fact that a surety is compensated. We hold, therefore, that the surety subrogee succeeds to all rights of its assured and is subject only to those defenses the bank may have raised against the assureds. See 35 Va.L.Rev. 647, 23 Ins. Counsel J. 104, 22 Ins. Counsel J. 453.

The exigencies of the free flow of commerce require,

in our view, that a bank be held to the strict requirements of the authority given to it by customers who should not be concerned that its depositing agency act in any manner in the handling of customer accounts but in the way it is directed by the customer. To hold otherwise would shake the confidence of the commercial public in its banking institutions and restrict the accepted use of checks and drafts as instruments of money.

"The general rule is that a person or corporation called upon to act upon the faith of a written instrument, including an endorsement of commercial paper, must ascertain its genuineness at its peril. The principle rests in public policy and has been universally necessary for the security of commercial transaction." Hamlin's Wizard Oil Co. v. United States Express Co., 106 N.E. 623 (Ill. 1914).

Therefore, while we are of the opinion that the trial court was correct in finding no material issue of fact as between the appellant and respondent bank, we think the wrong law was applied. Therefore, we reverse the summary judgment in favor of the bank and direct the entry of summary judgment in favor of Federal pursuant to appellant's cross-motion for summary judgment below.

3. The trial court had also entered summary judgment for Toiyabe but the reasons for the ruling are not supported by the record. The issue of apparent or ostensible authority that may have been created by the employer companies toward Toiyabe is one of fact. From the record, we cannot say, as a matter of law, that no apparent authority existed. Thus, there being an issue of material fact, summary judgment is not proper. The summary judgment in favor of Toiyabe Supply Company is reversed and that matter remanded for further proceedings.

We express no opinion as to liability, if any, between the respondents. That question was not presented by this appeal.

In view of these rulings, the appeal on the cost bill is

dismissed and appellant allowed its taxable costs below and here.

THOMPSON and BADT, JJ., concur.