*952
 
 OPINION
 

 Per Curiam:
 

 [1]
 

 Appellant Transamerica Insurance Company (Transamerica), posted a bond on behalf of respondents Terry W. Nelson (Nelson), Lisa D. Connor, and their company, Nelcon Construction, Inc. (Nelcon).
 
 [2]
 
 Nelcon signed a general indemnity agreement (GIA), agreeing to indemnify Transamerica for any costs incurred on the bond. Subsequently, a bond claimant sued Trans-america. When Nelcon refused to cooperate in defending the action, Transamerica undertook its own defense. Summary judgment was granted in favor of Transamerica on the basis that the action was outside the scope of bond coverage. Transamerica filed a third party complaint against Nelcon seeking indemnification of all costs and attorney’s fees incurred by Transamerica in defending the action. On cross-motions for summary judgment, the district court granted summary judgment for Nelcon, reasoning that the GIA did not cover the expenses incurred by Trans-
 
 *953
 
 america. We reverse and remand to the district court with instructions to enter summary judgment for Transamerica for the full amount of attorney’s fees and costs incurred in good faith by Transamerica in defending the action on the bond, and in seeking to enforce the GIA.
 

 FACTS
 

 Transamerica agreed to act as a surety for respondents, posting a contractor’s license bond on their behalf. Such bond is required by NRS 624.270 for respondents to engage in the business of contracting in Nevada. As a prerequisite to Transamerica posting the bond, respondents signed a GIA agreeing “to indemnify and save harmless the surety from and against any and all demands, liabilities, loss, costs, damages, or expenses of whatever nature or kind ... on bonds issued by the surety.”
 

 William Wortman (Wortman) brought an action against Trans-america on the bond. Wortman had hired Harris Associates to supervise the construction of his home. Harris Associates hired Floyd Blind Construction Company (Blind) and Nelson to furnish labor and materials to complete framing work on the house.
 
 [3]
 
 The work was defective and had to be redone. Wortman agreed to accept a promissory note from Blind and Nelson in the amount of $16,453.26 as compensation for the defective workmanship. Blind and Nelson failed to pay on the note, and Wortman filed claims against both Blind and Nelson’s sureties on their contractor’s bonds.
 

 For no apparent reason, Nelson and Nelcon failed to cooperate with Transamerica in defending the suit. Nelson made misrepresentations to Transamerica’s counsel about the execution of the promissory note, failed to show up for scheduled meetings, and was unresponsive to letters and requests for information regarding the action. Thus, Transamerica was forced to assume full responsibility for its own defense.
 

 Transamerica filed a motion for summary judgment, arguing that it was not liable to Wortman under the bond because Nelson performed the work and executed the promissory note before Transamerica became Nelcon’s surety.
 
 [4]
 
 The district court granted Transamerica’s motion, finding that the action was outside of the scope of the bond.
 

 
 *954
 
 Transamerica brought a third party claim against respondents for indemnification, subrogation, and injunctive relief. Trans-america filed a motion for summary judgment, arguing that because Transamerica was forced to defend itself as a result of the issuance of the surety bond, respondents were liable to Trans-america for $8,387.92 in attorney’s fees and expenses incurred in the action. Respondents brought a counter-motion for summary judgment, arguing that because there was no contractual relationship between Transamerica and Nelcon at the time of the misconduct alleged in the action on the bond, Nelcon could not be liable for expenses incurred by Transamerica in defending against the claim.
 

 The district court found that Nelcon had agreed under the GIA to reimburse Transamerica for all expenses incurred in good faith as a result of the execution of the bond, and that the attorneys’ fees prayed for by Transamerica were fees, costs, and expenses incurred as a result of the execution of the bond. The district court, however, granted summary judgment in favor of Nelcon, holding that the GIA provided only for reimbursement of expenses or liabilities incurred “on the bond.” The district court reasoned that Transamerica’s expenses were not incurred “on the bond” since summary judgment had been granted to Trans-america in the underlying action on the basis that the bond was not in place at the time of the alleged misconduct. Transamerica appeals the district court’s grant of summary judgment in favor of Nelcon.
 

 DISCUSSION
 

 Coverage under the GIA
 

 Transamerica asserts that the GIA expressly provides for coverage of
 
 any liability
 
 for damage or expense incurred as a result of the issuance of the bond, regardless of whether or not an action is eventually determined to be outside the scope of bond cover- . age. Thus, Transamerica maintains that because it was sued by Wortman as a result of issuing the contractor’s bond to Nelcon, it is contractually entitled to indemnity for costs incurred in defending the action. We agree.
 

 The bond and the GIA are two separate contracts with different terms of rights and responsibilities. The district court’s decision confuses the coverage of the bond with the coverage of the GIA. The bond, by its terms, was for a finite, specified period of time; however, claims arising outside this specified period of time, or which are otherwise not subject to coverage under the bond, may be brought against the surety.
 
 [5]
 
 As the invalidity of such a claim
 
 *955
 
 will not preclude the entry of a default judgment against the surety, the surety will be required to defend itself. Thus, such a nonmeritorious claim amounts to a “demand” or a “liability” on the bond, which is expressly covered under the language of the GIA.
 
 See
 
 Piedmont Equipment Co., Inc. v. Eberhardt Mfg. Co., 99 Nev. 523, 528, 665 P.2d 256, 259 (1983) (“An indemnitee is not ‘held harmless’ pursuant to an express or implied indemnity agreement if it must incur costs and attorney’s fees to vindicate its rights.”);
 
 see also
 
 Lawson v. Halifax-Tonopah Mining Co., 36 Nev. 591, 598 (1913) (stating that the word indemnity means immunity from the punishment of past offenses, and an agreement to save harmless means relief from liability for damages already accrued).
 

 Additionally, the GIA provides that the surety has the right to reimbursement of attorney’s fees “irrespective of whether any bond loss payment has been made by a surety.” Thus, the agreement clearly provides for indemnification when the surety successfully defends an action on the bond.
 

 Our decision is further bolstered by the nature of the suretyship undertaking. The premium charged to principal obligors for the posting of a bond is calculated in contemplation of a complete recovery under the GIA.
 
 See
 
 Randall S. Udelman,
 
 Surety Contractors: Are Sureties Becoming General Liability Insurers?,
 
 22 Ariz. St. L.J. 469, 474 (1990). Sureties, unlike insurers, profit solely from the premiums they collect. Indemnification rights guard against potential losses, help reduce the surety’s risk, and keep premiums relatively low.
 
 Id..,
 
 Federal Insurance Company v. Toiyabe Supply Co., 82 Nev. 14, 409 P.2d 623 (1966) (the right to subrogation distinguishes suretyship from insurance, and such right is considered by the surety in arriving at the amount of bond premiums).
 

 Accordingly, we conclude that the GIA agreement in the instant case expressly covers expenses incurred by Transamerica in defending against Wortman’s action on the bond.
 

 Amount of attorney’s fees under the GIA
 

 Transamerica argues that if a surety provides the indemnitor with proper notice of the pending litigation and an adequate opportunity to defend, a surety who successfully defends the claim against it is entitled to all of the attorney’s fees and costs
 
 *956
 
 incurred in good faith as a consequence of having posted the bond.
 
 See
 
 United States Fidelity & Guaranty Co. v. Hittle, 96 N.W. 782 (Iowa 1903) (holding that a surety indemnity contract is not to pay such expenses as appear to have been reasonably necessary, but to pay such as have been paid for any cause, requiring only that the surety act in good faith in the matter);
 
 see also
 
 Heritage v. Pioneer Brokerage and Sales, 604 P.2d 1059 (Alaska 1979) (holding that where indemnification is required and the indemnitor is given proper notice of and opportunity to defend the litigation, the indemnitee is entitled to recover full costs and attorney’s fees); Manson-Ozberg Co. v. State, 552 P.2d 654, 660 (Alaska 1976) (the “hold harmless” clause requires that the surety be reimbursed for all costs and attorney’s fees in bringing suit to recover on the indemnity clause because the contractor can avoid such costs by paying the amount due without the necessity of suit). We agree.
 

 The issue of a surety’s entitlement to full attorney’s fees and costs under an indemnification contract is an issue of first impression in Nevada. In Piedmont Equipment Co., Inc. v. Eberhardt Mfg. Co., 99 Nev. 523, 528, 665 P.2d 256, 259 (1983), this court held that a distributor in a product liability action was entitled to equitable indemnity from the manufacturer for its defense costs. Under those circumstances, the court found that the distributor was not entitled to indemnification for defending charges of its own active negligence.
 
 Id.
 
 at 529, 665 P.2d at 260. However, in the case of a surety sued on a bond, the surety generally has no culpability whatsoever, and the entirety of its obligation arises from its undertaking on behalf of the indemnitor and principal obligor. Therefore, the GIA entitles the surety to full recovery of expenses incurred in defending the action on the bond.
 

 Transamerica maintains that many district courts treat the award of attorney’s fees to a surety pursuant to a GIA as a discretionary matter to be determined based upon the court’s subjective analysis of the “reasonableness” of the fees under the circumstances. We conclude that such a standard is in contravention of the purpose of the GIA to hold the surety harmless for all expenses consequential to the issuance of the bond. Thus, we adopt a standard under which courts should consider only whether the attorney’s fees were incurred in good faith as a result of or in consequence of the issuance of a bond. When the parties contractually agree that good faith is the standard, undertaking a determination of anything other than good faith is inappropriate.
 
 [6]
 

 
 *957
 
 The GIA in the instant case provides that in any claim or suit, an itemized statement of expenses is
 
 prima facie
 
 evidence of the fact and extent of the liability of the indemnitor. Transamerica submitted a detailed list of expenses for all legal work done in connection with the suit on the bond, and the suit against Nelcon for indemnity. Nelcon failed to introduce any evidence proving that the list of costs incurred by Transamerica was inaccurate, or that the costs were incurred in bad faith. Thus, the district court properly found that the expenses prayed for by Transamerica were incurred in good faith.
 
 See
 
 U.S. v. D Bar D Enterprises Inc., 772 F. Supp. 1167, 1173 (Nev. 1991) (holding that if an indemnity agreement provides that evidence of payment is
 
 prima facie
 
 evidence of an indemnitor’s liability, the burden is on the indemnitor to show that the action of the surety, in satisfying obligations, was not reasonable, or was in bad faith).
 

 Accordingly, we reverse the district court’s order granting summary judgment in favor of respondents, and remand with instructions to enter summary judgment against respondents for the full amount of attorney’s fees and costs incurred by Trans-america as a result of issuing the bond, including the costs of this appeal.
 

 By order entered June 4, 1992, this court permitted the law firm of Wells, Kravitz, Schnitzer & Sloane to withdraw from representation of respondents in this appeal. Additionally, we directed respondents to retain new counsel and cause counsel to enter an appearance with the clerk of this court. Respondents having failed to comply with the order of June 4, 1992, and a subsequent order to show cause issued October 29, 1992, on March 3, 1993, we dismissed respondents’ cross-appeal and submitted this matter for disposition on the record on appeal and appellants’ opening brief and supplemental opening brief.
 

 [2]
 

 Respondents will be collectively referred to as “Nelcon.”
 

 [3]
 

 Nelson was apparently working alone, and not in conjunction with co-respondents Connor and “Nelcon,” as only Nelson’s name appears on the invoices for the job.
 

 [4]
 

 Nelson’s alleged misconduct occurred in September of 1988, and the GIA and surety agreement were executed on December 30, 1988, and January 3, 1989, respectively.
 

 [5]
 

 NRS 624.270(4) provides that claims may be asserted on a canceled bond
 
 *955
 
 for up to two years after cancellation, explicitly allowing claims on bonds outside of the period of bond coverage. A decision by this court holding that actions for indemnification may only be successfully maintained based on bond claims which are made during file period of bond coverage would be at odds with NRS 624.270(4).
 

 [6]
 

 In their district court brief in opposition to Transamerica’s summary judgment motion, respondents argue that the district court already awarded
 
 *957
 
 Transamerica $750.00 “reasonable fees and costs” for the litigation on the bond when it ordered plaintiff Wortman to pay that amount to Transamerica. However, Transamerica did not request such an award from the district court, nor did the district court state at any time that it considered this the full amount to which Transamerica was entitled. Further, this award does not release a claim against respondents based on the GIA.