**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3560-19

OLGA TCHIKINDAS,

    Plaintiff-Respondent,

v.

BASSER-KAUFMAN
MANAGEMENT CORP., BASSER
KAUFMAN DEVELOPMENT
CORP., BASSER KAUFMAN,
INC., BASSER KAUFMAN,
BASSER KAUFMAN REAL
ESTATE PARTNERS, LLC,
MARLBORO PLAZA AND
UNIONDALE WG, LLC,
MARLBORO PLAZA
ASSOCIATES, LLC,
MARLBORO PLAZA
ASSOCIATES, MARLBORO
PLAZA, and MARLBORO
PLAZA PHASE I, INC.,

    Defendants-Appellants/
    Cross-Respondents,

and

TJX COMPANIES – TJ MAXX,
THE TJX OPERATING

COMPANIES, INC., and THE
TJX COMPANIES, INC.,

     Defendants-Respondents/
     Cross-Appellants.

_____

Submitted April 13, 2021 – Decided May 4, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1515-17.

Law Offices of Terkowitz & Hermesmann, attorneys for appellants/cross-respondents (Patrick D. Heller, on the briefs).

Kiernan Trebach, LLP, attorneys for respondents/cross-appellants (Alan G. White, on the brief).

PER CURIAM

Basser-Kaufman Management Corp., Basser Kaufman, Inc., Uniondale WG, LLC, Marlboro Plaza Associates, LLC, and Marlboro Plaza Associates (collectively, B-K), appeal from: (1) orders dated July 16, 2019, which denied B.K.'s motion for summary judgment and granted summary judgment in favor of TJX Companies – TJ Maxx, TJX Operating Companies, Inc., and TJX Companies, Inc. (collectively, TJX) on TJX's claim for indemnification and defense costs; (2) an order dated October 30, 2019, which denied B-K's motion for reconsideration; and (3) a judgment dated April 27, 2020, awarding TJX

$27,329.30 in defense costs. TJX cross-appeals from the April 27, 2020 order. For the following reasons, we affirm on the appeal, and remand for further proceedings on the cross-appeal.

I.

Marlboro Plaza Associates (MPA), a New York joint venture, entered into an agreement dated February 15, 1983, with Newton Buying Corp. (Newton), TJX's predecessor in interest, under which MPA leased and demised to Newton certain premises within the Marlboro Plaza Shopping Center (Marlboro Plaza or the Shopping Center) in Marlboro Township (the Demised Premises).[1] In the lease, MPA is identified as Landlord and Newton as Tenant.

The lease provides that the Landlord will construct a one-story building on the lot and the Tenant will operate a retail store under the TJ Maxx trade name in the Demised Premises. The initial lease term was for ten years, to begin: thirty days after the completion of construction of the building, ten days after delivery of a certificate of occupancy, or August 31, 1983, whichever date is last to occur. MPA and TJX Companies, Inc. executed amendments to the lease in January 1995, August 1995, September 2003, and February 2012, which

---

[1] According to the lease, Myron L. Kaufman, Steven Kaufman, Joan L. Klagsbrun, Wendy (Orange) Kritzler, Martin Kaufman, Lois Kaufman, and the Estate of Harold Basser are the sole venturers of MPA.

expanded the Demised Premises and extended the lease term through January 31, 2019.

Article VIII of the lease addresses the obligations of the parties to make repairs. Section 8.1 states that the Tenant "is required to maintain . . . the interior of the Demised Premises, including, without limitation, all glass and utilities conduits, fixtures and equipment within the Demised Premises . . . but excluding all property which Landlord is required to maintain as below provided." Section 8.2 of the lease provides that:

> Landlord shall make all replacements, repairs and alterations to the property which Landlord is required to maintain, as hereinafter set forth, which may be necessary to maintain the same in good repair and condition . . . However, notwithstanding anything in this lease . . . The property which Landlord is required to maintain is the foundation, the roof, the exterior walls, the roof drainage system, the canopy and the structural parts of the Demised Premises, plus all Common Areas of the Shopping Center . . . .

Schedule B of the lease sets forth certain conditions. It provides, in part, that the Tenant and all persons having business with the Tenant, "shall have the right to use, in common with all other occupants of the Shopping Center and all persons having business with such other occupants, all Common Areas of the Shopping Center for parking and access in connection with business in the Shopping Center." The lease also states that, "Landlord agrees that at all times

4

there will be free and uninterrupted access . . . for pedestrians between the [p]arking [a]reas and the main customer entrance of the Demised Premises." In addition, the lease provides that, "Landlord . . . shall keep in good repair and condition . . . all Common Areas of the Shopping Center . . . keep the Common Areas suitably paved and . . . keep all Common Areas free of refuse and obstruction . . . ."

Article XII of the lease addresses the parties' obligations for indemnification. Section 12.1 states:

> Tenant shall save Landlord harmless from, and defend and indemnify Landlord against, any and all injury, loss or damage, or claims for injury, loss or damage, of whatever nature, to any person or property caused by or resulting from any act, omission or negligence of Tenant or any subtenant or concessionaire of Tenant. It is a condition of this save harmless and indemnification that Tenant shall receive prompt notice of any claim against Landlord.

In addition, Section 12.2 of the lease states:

> Landlord shall save Tenant harmless from, and defend and indemnify Tenant against, any and all injury, loss or damage, or claims for injury, loss or damage, of whatever nature, to any person or property caused by or resulting from any act, omission or negligence of Landlord or its employees or agents. It is a condition of this save harmless and indemnification that Landlord shall receive prompt notice of any claim against Tenant.

A-3560-19

On April 23, 2017, plaintiff filed a complaint against Basser-Kaufman and TJX. Plaintiff alleged that on April 18, 2015, she was "lawfully" walking through the parking lot of the Shopping Center. Plaintiff asserted that she "suddenly" twisted her foot and tripped "on cracked, defective pavement in the parking lot" in front of the TJ Maxx store, and then tripped over the sidewalk curb in front of the store.

Plaintiff claimed she sustained personal injures to her head, left shoulder, left wrist and hand, and right ankle, as well as certain skin abrasions or lacerations. She alleged that at all relevant times, defendants "owed a duty to maintain, repair, [and] inspect for defects" on the premises at issue, and to provide invitees an environment that was safe and free from hazards.

Plaintiff further alleged that defendants had allowed the premises "to be and remain in a dangerous, insecure and therefore defective" condition, and this condition created "an unreasonable hazard" to persons lawfully on the premises, including plaintiff. She claimed she would not have been injured on the premises but for defendants' negligence. She alleged that "[s]uch negligent acts and omissions caused, contributed to, and were substantial factors in causing the incident" and her injuries.

B-K filed an answer and crossclaims against TJX, which included a claim for contribution and indemnification. Thereafter, TJX filed an answer and crossclaims against B-K. TJX asserted a claim against B-K for contribution as well as indemnification and defense costs.

TJX later filed a motion for summary judgment on plaintiff's claims and summary judgment on its crossclaim against B-K for indemnification and defense costs. B-K opposed TJX's motion and filed a cross-motion for summary judgment on TJX's claim for indemnification. Plaintiff joined B-K in opposing TJX's motion.

On July 12, 2019, the judge heard oral argument and placed her decision on the record. The judge found there were no genuine issues of material fact and TJX was entitled to judgment as a matter of law on its claim against B-K for indemnification and defense costs. The judge stated that under the circumstances presented, TJX did not owe plaintiff a duty of care.

The judge noted that under the lease, B-K is required to hold TJX harmless and indemnify TJX against any loss or damages for injury, of whatever nature, to any person resulting from the negligence of the Landlord or its employees. The judge pointed out that an indemnitee is entitled to defense costs so long as the indemnitee is found to be free from active wrongdoing regarding the

7

plaintiff's injury. The judge stated that the evidence showed plaintiff's injuries were not due to any negligence on the part of TJX because TJX did not owe plaintiff a duty of care as it had no obligation to maintain and repair the parking lot where plaintiff was injured.

The judge filed orders dated July 16, 2019, which denied B-K's motion for summary judgment and granted summary judgment in favor of TJX on its claim for indemnification and defense costs. The judge ordered TJX to submit an affidavit or certification detailing the attorney's fees and costs it was seeking, with supporting documentation and additional legal authority.

B-K filed a motion for reconsideration of the court's July 16, 2019 orders. B-K contended that the court should reconsider its decision that TJX was entitled to indemnification and defense costs. Alternatively, B-K argued that the court should reduce the amount of defense costs that TJX was seeking. TJX opposed the motion. The judge heard oral argument on August 30, 2019 and later issued an order and statement of reasons denying B-K's motion.

TJX filed an affidavit of services, which stated that it was seeking $29,406.80 in attorney's fees and costs incurred from August 9, 2017, through January 12, 2020. The judge filed an order dated April 27, 2020, which entered judgment against MPA and Basser-Kaufman Management, Inc. in the amount of

$27,329.30. The judge found this amount would reasonably compensate TJX for the defense costs it incurred in the litigation. The judge also denied TJX's application for post-judgment interest "without prejudice," noting that TJX had not demonstrated it was entitled to the award of post-judgment interest.

In the attached statement of reasons, the judge noted that she had disallowed some of the attorney's fees included in TJX's application. The judge also rejected B-K's contention that the defense costs should be apportioned to eliminate any costs TJX incurred defending against claims based on its own negligence. This appeal and cross-appeal followed.

II.

On appeal, B-K argues that the judge erred by granting TJX's motion for summary judgment on its claim for indemnification and defense costs. B-K contends TJX is not entitled to indemnification against losses resulting from its own negligence, and plaintiff's complaint included allegations of negligence on the part of TJX.

We review the trial court's order granting summary judgment by applying the standard in Rule 4:46-2(c). Invs. Bank v. Torres, 243 N.J. 25, 47 (2020) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Therefore, we must determine "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Furthermore, when summary judgment is based on a legal conclusion, we review the trial court's decision de novo. Torres, 243 N.J. at 47 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). A trial court's determination of a legal issue is not entitled to any special deference. Ibid. (citing Templo Fuente De Vida, 224 N.J. at 199).

Here, there is no genuine issue of material fact. The parties agree that at the relevant time, the lease was in effect between TJX, as Tenant, and MPA, as Landlord, for premises in the Shopping Center, and that one of the B-K entities was responsible for managing the Shopping Center. It is also undisputed that plaintiff claimed she tripped and sustained injuries due to an alleged dangerous condition in the parking lot, which is within the Common Areas of the Shopping Center.

B-K argues, however, that the trial court erred by finding that TJX was entitled under the lease to indemnification for the costs TJX incurred in defending itself against plaintiff's claims of negligence. B-K contends plaintiff's

complaint included claims of active negligence on the part of TJX, and the lease did not clearly and unambiguously state that TJX was entitled to indemnification for costs incurred defending these claims.

"The interpretation of a contract is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)). On appeal, we give "no special deference to the trial court's interpretation and look at the contract with fresh eyes." Id. at 223 (citing Manalapan Realty, L.P. vs. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The court's "objective in construing a contractual indemnity provision is the same as in construing any other part of a contract—it is to determine the intent of the parties." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 385 (App. Div. 2018) (quoting Kieffer, 205 N.J. at 223). "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Ibid. (quoting Kieffer, 205 N.J. at 223).

"If an indemnity provision is unambiguous, then the words presumably will reflect the parties' expectations." Id. at 386 (quoting Kieffer, 205 N.J. at 223). "However, indemnity provisions differ from provisions in a typical

contract in one important aspect." Kieffer, 205 N.J. at 223. "If the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" Ibid. (quoting Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)).

There are two reasons for the "strict-construction approach." Id. at 224. "[A] party ordinarily is responsible for its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language." Ibid. (citing Am. Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc., 655 A.2d 858, 861-62 (D.C. 1995)). Furthermore, under the American Rule, each party is responsible for its own attorney's fees, in the absence of some statute, judicial authority, or "express contractual language to the contrary. . . ." Ibid. (citing L'Enfant Plaza Props., 655 A.2d at 861-62).

Where the contract does not expressly and unequivocally provide that the indemnitor shall indemnify another party for the legal expenses incurred in defending against claims of that party's own negligence, the indemnitor is not liable for those costs. Mantilla, 167 N.J. at 272-73. The principles announced in Central Motor Parts Corp. v. E.I. duPont deNemours & Co., 251 N.J. Super. 5 (App. Div. 1991), apply and "fill[] the gap that the parties left open in their contract." Mantilla, 167 N.J. at 273.

"[O]nce it is determined . . . that an indemnitee has defended against alleged . . . charges of its independent fault, the indemnitor is not liable for indemnification for those costs." Cent. Motor, 251 N.J. Super. at 12. Thus, costs an indemnitee incurred "in defense of its own active negligence . . . are not recoverable . . . ." Id. at 11 (citing Hanover Ltd. v. Cessna Aircraft Co., 758 P.2d 443, 448 (Utah Ct. App. 1988)).

In determining whether a party has alleged "active wrongdoing," the court applies "an after-the-fact approach." Ibid. The indemnitee may recover its defenses costs "so long as the indemnitee is free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation." Ibid. (quoting Piedmont Equip. Co. v. Eberhard Mfg. Co., 99 Nev. 523, 527 (1983)).

The starting point for the analysis is the pleadings, "but the actual facts developed during trial should control." Ibid. "Evidence which supports only a finding of passive negligence . . . is insufficient to establish 'active wrongdoing.'" Ibid. (citing Piedmont Equip. Co., 99 Nev. at 527). A claim that an indemnitee is only "derivatively or vicariously liable" is a claim of passive negligence. Ibid. (citing Hanover Ltd., 758 P.2d at 448).

13

As noted, in her complaint, plaintiff asserted a negligence claim against TJX based on the alleged failure to maintain the parking lot in the Common Area of the Shopping Center. However, the lease clearly and unambiguously places responsibility for maintenance and repair of the Common Areas of the Shopping Center, including the parking lot, upon the Landlord, not the Tenant.

Therefore, the motion judge correctly found that under the terms of the lease, TJX did not owe a duty of care to plaintiff. Because the judge found that TJX was free from active wrongdoing with regard to plaintiff's injuries, TJX was entitled under the lease to indemnification for the costs it incurred defending against plaintiff's claims.

Our decision in Kandrac v. Marrazzo's Mkt., 429 N.J. Super. 79 (App. Div. 2012), supports the trial court's conclusion that TJX was free from active wrongdoing. In Kandrac, the defendant's store was one of thirty-six stores in a shopping center. Id. at 81. The plaintiff fell in the shopping center's parking lot after she left the defendant's store. Ibid.

The plaintiff filed a complaint naming the store and the shopping center as the defendants. Id. at 82. She alleged that she fell because of a defect in the parking lot. Id. at 87. The defendant's lease required the lessor to maintain the

common areas of the shopping center, which included the parking areas for customers. Ibid.

The plaintiff alleged that the defendant store had a duty to provide safe ingress and egress from the store to the parking lot. Id. at 83. We held, however, that under the circumstances, the defendant store did not owe a duty of care to the plaintiff. Id. at 90-91. We stated that the lease

> squarely assigns the duty to maintain the area where plaintiff was injured to the landlord. Consistent with that allocation, the testimony of the witnesses showed that, while [defendant store's] employees made periodic inspections of the parking area, all repair and maintenance issues were referred to the landlord. The landlord retained the obligation to make such inspections, did so, and performed all necessary repairs and maintenance. The record does not establish any "rights" that [defendant store] had over the area where the injury occurred that conflicted with the allocation of responsibility in the lease covenant.
>
> [Id. at 89.]

We concluded that, "as a general rule, when a commercial tenant in a multi-tenant shopping center has no control or contractual obligation to maintain a parking lot shared with other tenants, the common law does not impose a duty upon the tenant to do so." Id. at 90-91. That holding applies here.

B-K argues, however, that a tenant in a multi-tenant shopping center may be liable for negligence in a common area of the shopping center. B-K therefore

15

argues that plaintiff's claim against TJX was, in fact, a claim of active negligence for which TJX is not entitled to indemnification.

In support of this argument, B-K relies upon Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 251 (App. Div. 2013). In Nielsen, Walmart had retained the plaintiff's employer to provide exterminating services, and the plaintiff was at the shopping center to perform the work. Id. at 254. The developer of the mall owned and maintained the exterior around Walmart's unit. Id. at 254-55. In the master deed with Walmart, the developer had agreed to maintain and repair the common elements of the shopping center. Id. at 255. We noted that Walmart had directed the plaintiff to the part of the common elements for the performance of the services. Id. at 254.

We held that under these circumstances, Walmart owed a duty of care to the plaintiff. Id. at 262-63. We stated the fact that the developer had contractually agreed to repair and maintain the area in question provides some support for Walmart's contention that it owed no duty to the plaintiff. Ibid. We stated, however, that:

> Walmart, as a unit owner, is fairly chargeable with a duty to be familiar with the perimeter outside its unit and other common areas that its invitees and passersby might foreseeably use. The imposition of a duty encourages a business owner such as Walmart to alert the contractually responsible entity about hazardous

16

conditions. Walmart also directed plaintiff to use the unit's perimeter, and it was in the course of following that direction that plaintiff encountered the area in which he was injured. And Walmart had an adequate remedy -- if found liable and held obligated to compensate for an injury occurring on the developer's property -- in its right to seek indemnification from the developer. The relationship of the parties, the attendant risks, the nature of the risks, and simpl[e] fairness to the innocent plaintiff, warrant the imposition of a duty of care on Walmart regarding hazardous conditions outside and along the perimeter of Walmart's premises even though the developer may also be liable and even though the developer contractually agreed to be responsible for repair and maintenance of the area.

[Id. at 263 (footnote omitted).]

However, B-K's reliance upon Nielsen is misplaced. In that matter, Walmart did not have a duty to maintain the common elements of the shopping center, but the court found it had a duty to inform the developer about hazardous conditions. In addition, Walmart had directed the plaintiff to perform work in the perimeter of the common area and the plaintiff was injured at that location.

In this case, the motion judge correctly found that TJX did not have a duty under the lease to maintain the parking lot, and the lease did not require TJX to inspect and alert the Landlord of any defects in the Common Areas. Furthermore, TJX did not direct plaintiff to the area of the parking lot where she fell. The judge correctly found that under the circumstances, TJX did not owe

17

plaintiff a duty of care and TJX was free of active wrongdoing regarding plaintiff's injuries.

In support of its argument, Basser-Kaufman also cites to New Gold. In that case, the plaintiff brought suit against a bank alleging that it had been negligent in the performance of its duties as trustee under a bond agreement. Id. at 365-66. Following a bench trial, the court entered judgment for the bank, finding that while the bank had been negligent, the plaintiff had not shown the bank's negligence was a proximate cause for its damages. Id. at 370-71. The court also found that the plaintiff "was negligent to an extent far greater than the [b]ank" and its contributory negligence "was the primary cause of the harm." Id. at 371. In addition, the court denied the bank's application for defense costs incurred in the litigation. Id. at 371-72.

We held the trial court had correctly denied the bank's claim for defense costs. Id. at 385-87. We noted that under the trust agreement, the bank was entitled to indemnification for claims, damages, and losses arising out of, or resulting from, the financing or sale of the underlying project. Id. at 386. We concluded that the trial court had correctly applied the "after-the-fact" approach in determining whether the bank had incurred costs defending claims of its own active negligence. Id. at 387 (citing Cent. Motor, 251 N.J. Super. at 11).

We noted that the facts developed at trial only concerned the bank's own active negligence, and there were no allegations or findings that the bank was only liable "derivatively or vicariously." Ibid. (quoting Cent. Motor, 251 N.J. Super. at 11). We concluded that because the plaintiff's claims were based solely on allegations of the bank's own negligence, it was not entitled to indemnification for its defense costs. Ibid.

New Gold provides no support for B-K's arguments on appeal. As we have explained, in New Gold, the party seeking indemnification was found to be negligent, and the only claims developed at trial pertained to that party's own active negligence. In this case, however, the motion judge expressly found that TJX had no active wrongdoing regarding plaintiff's injuries. Thus, B-K's reliance upon New Gold is misplaced.

B-K further argues that even if it is required to indemnify TJX, TJX's recovery should be limited. B-K asserts that TJX should not be awarded fees and expenses attributable to defenses primarily directed at rebutting charges of its active negligence. The contention is entirely without merit. As noted, the trial court found that TJX was free from active wrongdoing with regard to plaintiff's injuries and the record supports that finding. The trial court correctly

19

rejected B-K's contention that TJX's recovery for its defense costs should be limited on this basis.

B-K also contends the trial court erred by denying its motion for reconsideration. B-K's argument is without merit.

We will not disturb a court's decision on reconsideration "unless it represents a clear abuse of discretion." Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). A court can reconsider its decision if: the decision was "based upon a palpably incorrect or irrational basis," or the court failed to "consider, or . . . appreciate the significance of probative, competent evidence." Ibid. (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)).

Here, the trial court's initial decision was not incorrect or irrational, and the court properly considered all probative, competent evidence in reaching that decision. The trial court's decision to deny B-K's motion for reconsideration was not a mistaken exercise of discretion.

### III.

In its cross-appeal, TJX argues that the trial court erred by refusing to award it post-judgment interest. As noted, the judge found that TJX is not

entitled to post-judgment interest because it had not established that it is entitled to the award of such interest.

On appeal, TJX argues the award of post-judgment interest is essentially "automatic" under Rule 4:42-11(a), and such interest should be awarded as a matter of course unless there are exceptional circumstances that warrant denial of such interest. TJX contends there are no exceptional circumstances warranting the denial of post-judgment interest in this case.

Rule 4:42-11(a) states that, "[e]xcept as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and attorney's fees shall bear simple interest," calculated in accordance with the rule. We have observed that "[b]oth [Rule 4:42-11(a)] and our case law clearly indicate that a judgment creditor is entitled to post-judgment interest at the rate specified in [Rule] 4:42-11(a) absent an extraordinary and equitable reason." Marko v. Zurich N. Am. Ins., 386 N.J. Super. 527, 532 (App. Div. 2006).

Here, the trial court erred by stating that post-judgment interest should not be awarded because TJX failed to present reasons to justify the award of post-judgment interest. Rule 4:42-11(a) provides that post-judgment interest should be awarded on a monetary judgment unless the court orders otherwise. A party

who obtains a monetary judgment should be awarded post-judgment interest unless the court finds there is an "extraordinary and equitable" reason for denying such interest.

Therefore, we remand the matter to the trial court for further consideration of TJX's claim for post-judgment interest. The trial court should award TJX post-judgment interest unless the court finds there is an "extraordinary and equitable" reason for denying such interest.

Affirmed in part and remanded in part for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22      A-3560-19