986 A.2d 680 (2010)
411 N.J. Super. 354
Kathryn POTE and Daniel Pote, h/w, Plaintiffs-Appellants,
v.
CITY OF ATLANTIC CITY, Atlantic City Convention Center Authority, Boardwalk Hall, Atlantic City Convention and Visitors Authority, New Jersey Sports And Exposition Authority, Ara Facilities Management, Inc., Fmg Partners, and Aramark, Defendants, and
SMG, Defendant-Respondent.
No. A-2544-08T3
Superior Court of New Jersey, Appellate Division.
Argued October 7, 2009.
Decided January 19, 2010.
*681 Joseph S. Lukomski, Feasterville, PA, argued the cause for appellants (Rovner, Allen, Rovner, Zimmerman, Lukomski & Wolf, attorneys; Mr. Lukomski, on the brief).
Peter K. Barber argued the cause for respondent (Daly, Lamastra & Cunningham, attorneys; Mr. Barber, on the brief).
Before Judges AXELRAD, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
Plaintiffs Kathryn and Daniel Pote appeal summary judgment dismissal of Kathryn's premises liability complaint against SMG, the manager of Boardwalk Hall, for injuries allegedly sustained when she slipped and fell on an icy patch of snow on the Atlantic City Boardwalk as she was approaching Boardwalk Hall to attend a show.[1] Plaintiffs also appeal denial of their motion for reconsideration. They do not appeal the dismissal of their complaint against Atlantic City based on its immunities under the Tort Claims Act. We affirm.
Viewed most favorably for plaintiff, Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995), the motion record reveals the following. The Atlantic City boardwalk is approximately four-and-a-half miles long and varies in width from about twenty feet in the inlet section to more than sixty feet in front of Boardwalk Hall. On one side of the boardwalk is the beach that goes down to the ocean, and on the other side of the boardwalk are buildings, including stores and businesses, casinos and Boardwalk *682 Hall. It is undisputed that Atlantic City not only owns and controls the boardwalk but that it has undertaken responsibility for the removal of snow and ice. Boardwalk Hall, located at 2301 Boardwalk, is owned by the State of New Jersey and is managed and maintained by SMG pursuant to a contract with the New Jersey Sport and Exposition Authority. Boardwalk Hall is adjacent to the boardwalk and its only public entrance is by way of the boardwalk. It has a flat surface or apron of marble, terrazzo or concrete that extends from the doors of the building to a series of columns that abut the boardwalk.
Approximately five inches of snow fell on Thursday, February 24, 2005, in Atlantic City, beginning at about 7:30 a.m. City employees conducted snow removal detail and inspections on the boardwalk on Friday, but did neither on Saturday, February 26. On that Saturday, no one from the public works department was working.
On Saturday, plaintiff came to Atlantic City on a bus that arrived at Trump Casino at around 10:30 a.m. She and several other passengers had tickets for the "Mummers Show of Shows" at the adjacent Boardwalk Hall. There was an expected crowd of about 5,000 people for each of the two shows that day. Plaintiff walked through the Trump building out onto the boardwalk and observed both the wood of the boardwalk and numerous patches of ice and snow covering the wood. Plaintiff described those patches as "piles" and "then they melted." She also observed a plow line of snow along the edge of the boardwalk where the businesses were located, including next to the cement apron of Boardwalk Hall.
According to plaintiff's answers to interrogatories, when she was "about 50 feet back from the doors [of Boardwalk Hall], about 10 feet away from the cement apron,... [she] slipped and fell on the uneven ice that formed on the boardwalk where it had been previously plowed and cleared and had melted and refroze." In depositions, plaintiff further explained that the ice she slipped on was grayish in color; she was five to eight feet from the nearest pile of snow, which was on the plow line; and there was no snow immediately next to the place where she fell. When asked how she thought the ice got onto the boardwalk at the place where she slipped, plaintiff responded that she "believe[d] it froze from the weather." Plaintiff did not witness anyone cleaning snow or ice off the boardwalk or off the cement apron of Boardwalk Hall at that time. Plaintiff was taken to Atlantic City Medical Center and she obtained follow-up medical treatment not relevant to this motion.
Teresa Alicea and Colleen Hight, members of plaintiff's bus theater group, also submitted affidavits on her behalf. Alicea, the group leader, stated that she observed what appeared to be hundreds of people in line on the boardwalk from Trump Casino to Boardwalk Hall waiting to purchase tickets for the noon Mummers Show. She further observed a snow line on the boardwalk in front of Boardwalk Hall and patches of snow, ice and slush on the boardwalk in the area in front of Boardwalk Hall. Alicea also noticed "piles of snow around trash cans and up against the pillars immediately outside Boardwalk Hall." She commented that there was "no evidence of salting or chemical treatment of snow or ice on the boardwalk in front of Boardwalk Hall." Alicea led her group past the line of people waiting to buy tickets and as she began to approach the entrance to Boardwalk Hall, she "slipped on a patch of snow and slushy ice and almost went down" on the boardwalk, "just a short distance from the tile area at the entrance to Boardwalk Hall." Right after that, she heard a noise and saw that plaintiff had *683 fallen on the boardwalk on the patch of snow and slushy ice that she had just slipped on.
Alicea reported the incident to the Boardwalk Hall security staff. When she exited onto the boardwalk after the show two hours later, Alicea noticed that more of the snow and ice patches had been removed, including the patch where plaintiff had fallen, and that some of the ice and snow had been shoveled or swept up against the trash cans that were outside Boardwalk Hall. As she did not observe any city workers present, Alicea therefore assumed the Boardwalk Hall maintenance crew had removed the snow.
Hight's affidavit was similar to that of Alicea's. She observed that the "patch of ice and snow which caused [plaintiff] to slip and fall was fairly close to a pile of melting snow in front of one of the pillars of Boardwalk Hall." Later, she noticed that the tile surface behind the pillars at the Hall's entrance was cleared of snow, although there was some wetness on the tile area. It appeared to her that the snow from the tile area had been pushed onto the boardwalk and also piled on the boardwalk in front of Boardwalk Hall's pillars. Hight noted that she slipped on a patch of snow and slushy ice on the boardwalk in the same vicinity moments before plaintiff.
Salvatore Catanese, Atlantic City's Public Works Investigator, testified in depositions that the City was the entity responsible for maintaining and removing snow and ice from the boardwalk and explained the procedures followed by the department. He stated that when it snowed, before and after the incident, he observed what he assumed to be Boardwalk Hall employees "clearing snow out in front of their building." He was unaware whether the clearing included "taking the snow from the boards themselves." He had no facts or records to indicate that Boardwalk Hall employees had been engaged in "removing snow from the boardwalk itself" during the week leading up to February 26, 2005.
John Tesone, the Assistant General Manager of Boardwalk Hall for SMG at the time of the incident,[2] testified in a deposition as to SMG's responsibility with regard to snow and ice removal around Boardwalk Hall. He stated that the property ended at the marble apron abutting the boardwalk. Tesone explained that SMG would clear any snow on the apron, including that which accumulated from the City's plowing operations. When asked by plaintiffs' attorney whether the clearing of the latter extended out onto the boardwalk, Tesone responded, "[p]ossibly a short distance," which he clarified as "maybe a foot or two." Tesone also explained that SMG's maintenance crews would move the snow to "in front of those columns that separate the portals" "to open up the portals" for people to enter off the boardwalk. He stated they only used shovels for snow removal, not snow blowers, because it is a very small area, and although they might use salt on the apron, they did not salt "any part of the actual wooden boardwalk."
Tesone presented a certification in connection with SMG's summary judgment motion seeking to clarify his response to what he believed was an ambiguous question by plaintiffs' counsel regarding SMG's snow removal procedure on the boardwalk side of the building. He explained that SMG's only obligation is to clear the snow from the apron abutting Boardwalk Hall, including that which is pushed onto the property from the City's snowplow, and that he "never understood SMG's obligation *684 to include clearing snow and ice from the boardwalk, itself." He claimed he understood the inquiry to be whether SMG employees clear snow from the boardwalk when they are clearing the apron, not whether they push snow from the apron onto the boardwalk. Tesone further explained that if the snow plow left a pile at the foot of the apron that extended partially onto the boardwalk, SMG's snow removal would extend a "short distance," namely "a foot or two," onto the boardwalk; he did not mean that SMG placed snow there. Tesone also clarified that the plow line of snow is placed "close in around the columns" to "make room for people to walk by," but is not thrown or moved onto the boardwalk.
Following oral argument on December 9, 2008, the trial court granted SMG's motion for summary judgment, memorialized in an order of that date. On January 23, 2009, the court issued a Memorandum of Decision and order denying plaintiffs' motion for reconsideration. The court articulated plaintiffs' theory of liability against SMG as follows: having the court impose a duty on SMG as the maintenance entity for Boardwalk Hall to clear snow from the boardwalk; establishing inferentially that SMG voluntarily and negligently undertook to clear snow from the boardwalk; and establishing inferentially that when SMG employees cleared snow from the apron that extended from the exterior wall of Boardwalk Hall to the columns abutting the boardwalk, SMG somehow created the patch of ice that caused plaintiff's fall.[3]
The court did not adopt SMG's classification of the boardwalk as a public street rather than a sidewalk in assessing whether the commercial entity owed a duty to its invitee for injuries sustained on the boardwalk. Instead, it viewed the boardwalk as a "hybrid." Regardless of the nomenclature used, however, the court concluded that the boardwalk was "clearly a public thoroughfare that is owned, maintained and controlled by the City of Atlantic City." Thus, the court framed the inquiry to be whether, as a matter of fairness, it is reasonable to impose on the proprietor of commercial premises a duty to maintain the abutting public thoroughfare (boardwalk) that is otherwise owned and maintained by a public entity who accepts responsibility for snow and ice removal, in situations where the commercial entity could anticipate that large crowds would gather on the boardwalk to enter the show at its establishment. The court was satisfied that to impose such duty on SMG would be an extension of the current law and not warranted for "any good public policy reason."
The court rejected plaintiffs' argument that the duty already existed by reason of the principles of law enunciated in Warrington v. Bird, 204 N.J.Super. 611, 616 (App.Div.1985), certif. denied, 103 N.J. 473, 511 A.2d 653 (1986), and Mulraney v. Auletto's Catering, 293 N.J.Super. 315, 321, 680 A.2d 793 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996). Both cases involved personal injuries to restaurant patrons who were struck by vehicles while crossing a poorly illuminated county road between the restaurant and parking lot. In Warrington we imposed a duty on a restaurant owner to exercise reasonable care to protect the safety of its patrons from the traffic hazards of the road separating the restaurant and its parking lot. 204 N.J.Super. at 617-18, 499 A.2d 1026. We focused on the expectation of the invitees of safe passage in traversing the expected route from the parking facility to *685 the establishment to which they were invited and noted that the benefiting business could reasonably remedy the unsafe condition along the route. Id. at 617, 499 A.2d 1026.
In Mulraney we imposed a similar duty on a catering facility to undertake reasonable safeguards for the safety of its patrons in passing over the road to and from a parking lot that the commercial entity did not own or control, but knew was being used by its patrons in situations where the business conducted special functions that attracted an unusually large number of attendees. 293 N.J.Super. at 322-23, 680 A.2d 793. We noted that the catering facility acknowledged the risk posed to its patrons and its responsibility for their safety by hiring off-duty police officers to regulate traffic for some functions and purchasing warning signs that could be placed along the highway to alert motorists of the pedestrian crossing. Id. at 322, 680 A.2d 793. However, as noted by the trial court, in MacGrath v. Levin Properties, 256 N.J.Super. 247, 253-54, 606 A.2d 1108 (App.Div.), certif. denied, 130 N.J. 19, 611 A.2d 656 (1992), we declined to impose a duty on a shopping center to provide a means of safe pedestrian passage across an adjoining state highway with traffic signals or warn those patrons of the apparent dangers of crossing the highway where the shopping center did not provide parking for its customers on the other side of the highway.
Critically, as Judge Nugent pointed out, unlike the argument made in the present case, the Warrington and Mulraney plaintiffs did not contend that the defendants had a duty to do something in the public thoroughfare and, in fact, we found the commercial establishments only had a duty to take measures on their own premises to alert motorists and patrons to the dangers of the roadway, such as providing lighting, erecting a sign or flashing signal, or hiring traffic control police officers. Warrington, supra, 204 N.J.Super. at 617-18, 499 A.2d 1026; Mulraney, supra, 293 N.J.Super. at 324, 680 A.2d 793. Moreover, to the extent that plaintiffs in the present case sought to extend this duty to require the proprietor of a business abutting a boardwalk to post warning signs on the boardwalk, a public thoroughfare, they presented no evidence that such businesses were authorized to do or otherwise did so. Judge Nugent also recognized that if the commercial establishments, including the casinos, placed such signs on the boardwalk every time it snowed, an entire lane of the four-and-a-half-mile boardwalk could be obstructed and potentially create a hazardous condition for their patrons.
The court further found that no facts or fair inference could be drawn from the record to support plaintiffs' argument that SMG created the banks of snow that existed along the snowline abutting Boardwalk Hall's apron, or that the patch of ice and slush that plaintiff fell on was caused by the melting of snow along the snow line or piled against the pillars that then ran out onto the boardwalk and refroze. Judge Nugent supported this conclusion with reference to the evidence in the record that the plowing was done by Atlantic City, the fact that no witnesses had firsthand knowledge of SMG's activities on the day in question, and his conclusion drawn from plaintiff's and her friend's certifications and deposition testimony that they were "really talking about not a condition that's created by a stream of water running from one place to another, but really [about] sporadic ice conditions that ... [do not] lend themselves to the reasonable inference that it was created by the snow line."
The judge further addressed Alicea's certification, noting that she had no firsthand knowledge how the patch upon which *686 plaintiff had fallen was thereafter cleared, and did not eliminate the possibility that it was cleared "just by virtue of people walking through it or a temperature change." The judge concluded that because Alicea "had no firsthand knowledge and because the inference she submits [a]s reasonable [that the boardwalk hall maintenance crew had removed the snow] is based on a series of deductions that have to be made from some pretty thin evidence, ... it's not a reasonable inference in this matter."
The court denied plaintiffs' motion for reconsideration, concluding they "made no new arguments" but "[i]nstead, they have simply rehashed the arguments they previously made, but have somewhat varied their emphasis on selected parts of depositions of witnesses deposed during discovery." The court was satisfied it had previously addressed in its lengthy decision on the record all of the arguments currently made by plaintiffs. This appeal ensued.
On appeal, plaintiffs challenge the court's summary judgment ruling as erroneous, contending: (1) due to the special circumstances that it expected 5,000 paying customers for each of the two shows who would walk or wait in line on the boardwalk directly in front of Boardwalk Hall, SMG had a duty under the factors set forth in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993), to provide its customers with safe passage over the limited area of boardwalk leading to the entranceway; (2) there were genuine issues of material fact as to whether, and to what extent, SMG removed snow and ice from its premises and from the area immediately in front of its premises and put it on the boardwalk, and whether SMG exercised temporary control over the area in question by subsequently clearing the patch of ice which caused plaintiff to slip and fall; (3) in light of the expectations of the City, the public, and SMG that the boardwalk (in terms of primary use) is more like a sidewalk than a street, SMG had a duty under Mirza v. Filmore Corp., 92 N.J. 390, 456 A.2d 518 (1983), to at least salt the area of the boardwalk in front of its premises where thousands of patrons would line up to enter; (4) in light of the reasonable inference that SMG put snow on the boardwalk in front of the pillars in front of Boardwalk Hall, it should be liable for "repairs voluntarily undertaken but negligently performed"; and (5) the duty of SMG should have been defined in terms of the need to take some reasonable action to provide safe ingress and egress over the limited area of the boardwalk in front of Boardwalk Hall where patrons would be expected to line up and enter for the special events in question, which duty SMG failed to meet.
Plaintiffs also challenge the court's denial of their motion for reconsideration, arguing the court failed to appreciate the significance of the totality of the evidence presented on the issue of whether a reasonable inference could be drawn that SMG either created or contributed to the existence of the patch of ice which caused plaintiff to slip and fall. In particular, they contend that Tesone's testimony about SMG's routine of removing snow and ice from its premises can be construed as an admission that SMG moved the snow onto the boardwalk in front of the pillars outside Boardwalk Hall. We are not persuaded by any of these arguments.
When reviewing a grant of summary judgment, we employ the same standards used by the motion judge. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). First, we determine whether the moving party has demonstrated that there were no genuine disputes as to *687 material facts, and then we decide whether the motion judge's application of the law was correct. Atlantic Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230-31, 903 A.2d 513 (App.Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). In so doing, we view the evidence in a light most favorable to the non-moving party. Brill, supra, 142 N.J. at 523, 666 A.2d 146. We accord no deference to the motion judge's conclusions on issues of law, Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), which we review de novo. Dep't of Envtl. Prot. v. Kafil, 395 N.J.Super. 597, 601, 930 A.2d 457 (App.Div.2007).
The establishment of a duty in tort liability is a question of law. Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; Kelly v. Gwinnell, 96 N.J. 538, 552, 476 A.2d 1219 (1984). The jury then determines whether that duty was satisfied. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 419, 840 A.2d 822 (2004). Whether a landowner owes a duty of reasonable care toward its patrons "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; see also Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962). This determination requires the balancing of several factors, such as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; see also Goldberg, supra, 38 N.J. at 583, 186 A.2d 291. This fact-specific analysis, hereinafter referred to as the "Hopkins" standard, must also generate intelligible and sensible rules that provide future parties with discernable guidelines. Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110. We applied these factors in the Mulraney and MacGrath cases. Mulraney, supra, 293 N.J.Super. at 321-22, 680 A.2d 793; MacGrath, supra, 256 N.J.Super. at 254-56, 606 A.2d 1108.
New Jersey courts have not imposed a duty on a property owner to maintain a public street or to clear ice and snow from a public street. In Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 157, 432 A.2d 881 (1981), our Supreme Court first imposed a duty on commercial landowners to reasonably maintain abutting sidewalks and held them liable for a pedestrian's injuries resulting from their negligent failure to do so. The Court later included in that obligation the removal of snow and ice from abutting sidewalks. Mirza, supra, 92 N.J. at 395-96, 456 A.2d 518.
In Monaco, supra, the Court imposed a duty on a commercial landowner to protect its invitees exiting the building from a loose municipal permit parking sign situated on its abutting sidewalk that became dislodged and airborne by a gust of wind, even though it was the city's responsibility to place and maintain the parking sign. 178 N.J. at 419, 840 A.2d 822. The Court emphasized that the injured party was seeking to hold the commercial property owner responsible for "negligently failing to take such measures as were within its power and duty to protect its invitees from reasonably foreseeable danger," and it was up to the jury to determine whether that duty was satisfied. Ibid. Applying the Hopkins standard, the Court considered that the injured party was an employee of the tenant of the building and thus the relationship advanced the landowner's commercial interests. Id. at 418-19, 840 A.2d 822. Moreover, the sign was installed to advance the interest of the landowner's tenants. Id. at 419, 840 A.2d 822. The commercial proprietor also had the *688 ability to regularly inspect the abutting sidewalk and sign, which was located approximately eight feet from the front entrance of the building, and, in fact, inspected the area two or three times a week. The Court further considered the lay testimony that the sidewalk directly beneath the sign was cracked and its pole had been visibly bent by the apparent impact of delivery trucks prior to the accident, and the expert testimony that even a minimally competent inspection would have revealed the defect that led to plaintiff's injuries. Id. at 408-10, 840 A.2d 822. Moreover, the landowner would have been required to do very little in addition to its routine inspection, namely, repair the sidewalk that it had installed, notify the city about the damaged sign, or take some other action to warn or otherwise protect its invitees from danger. Id. at 419, 840 A.2d 822. Further balancing those considerations against the fact that the injury that was likely to result from the defective street sign was a potentially serious one, the Court concluded that fairness and justice mandated the imposition of a duty on the commercial entity. Ibid.
With carefully defined exceptions that our courts have carved out, see infra, we have left undisturbed the common law rule in New Jersey that a property owner, who is otherwise without fault, owes no duty to pedestrians to maintain the abutting public way. MacGrath, supra, 256 N.J.Super. at 250-51, 606 A.2d 1108; Levin v. Devoe, 221 N.J.Super. 61, 63-64, 533 A.2d 977 (App. Div.1987). Plaintiffs have not cited, and we have not found, any case in New Jersey that imposes a duty on a landowner to clear ice and snow from an abutting public thoroughfare.
We agree with Judge Nugent that it is more appropriate to analyze the facts of this case under the more fluid Hopkins standard of basic fairness and public policy rather than attempt to classify the boardwalk as a sidewalk or public street. We are cognizant that the commercial relationship between a business enterprise and its patrons has traditionally required the exercise of "a higher degree of care" than is owed to other persons. Hopkins, supra, 132 N.J. at 433, 625 A.2d 1110; see also Mulraney, supra, 293 N.J.Super. at 321, 680 A.2d 793. Indeed, "our courts have extended a commercial landowner's duty, when warranted by the facts, to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property." Monaco, supra, 178 N.J. at 415, 840 A.2d 822.
We recognize that because Boardwalk Hall is uniquely accessed by its patrons only from the boardwalk, SMG enjoyed some benefit from the public use of the boardwalk.[4] However, we are not convinced the benefit automatically translates into a corresponding duty to protect its patrons from the hazards of the public thoroughfare that is maintained by the City. Nor are we convinced that a pedestrian walking along the boardwalk during the day with clear visibility of intermittent patches of ice and snow faces a substantial risk of slipping and suffering injury.
Moreover, plaintiffs have not demonstrated that such potential unsafe condition on the boardwalk might reasonably be remedied by the benefiting proprietor. Ibid.; Warrington, supra, 204 N.J.Super. at 617, 499 A.2d 1026. As noted by Judge Nugent, plaintiffs do not argue that SMG could have taken preventative measures on *689 its own premises but, instead, seek to compel it to take action on the public thoroughfare. Although plaintiffs argue that SMG had a special duty in anticipation of the crowds, they provide no testimony or proposal as to the location or extent of SMG's obligation to clear or salt on the abutting boardwalk. Nor was evidence presented that the adjoining commercial enterprise had the ability and authority to shovel, salt or place warning signs on the boardwalk owned and controlled by Atlantic City. In fact, as recognized by the trial court, there could be a further hazard and obstruction to pedestrians if all the commercial establishments abutting the boardwalk placed such signs on the boardwalk every time it snowed. Additionally, no evidence was presented that, if SMG had notified the City who then removed snow from the boardwalk in front of Boardwalk Hall, the accident could have been averted. For example, the melted and refrozen snow that plaintiff fell on could likely have been the product of people tramping along the boardwalk and carrying snow from one area to another.
Furthermore, in contrast to Mulraney, supra, the hazardous condition was not created by SMG's business operation. 293 N.J.Super. at 322-23, 680 A.2d 793. Unlike a patron crossing the street from a commercial establishment to its owned or customarily-used parking facility, plaintiffs have not provided any evidence that Boardwalk Hall's patrons traveled a definite route to reach the facility that was known by the commercial establishment. See Monaco, supra, 178 N.J. at 415, 840 A.2d 822; Warrington, supra, 204 N.J.Super. at 617, 499 A.2d 1026. There is access to Boardwalk Hall from either side of the four-and-one-half mile long boardwalk and the boardwalk abutting the terrazzo entrance to Boardwalk Hall is over sixty feet wide. Plaintiff entered the boardwalk from the adjacent Trump Casino and walked on the boardwalk past the line of people waiting to buy tickets to the Mummers Show and towards the entrance to Boardwalk Hall. She fell on the boardwalk fifty feet from the doors of Boardwalk Hall, ten feet from the outermost edge of its terrazzo, and five to eight feet from the nearest pile of snow, which was on the plow line. Unlike Warrington, supra, under these circumstances, plaintiff could not have had an expectation that SMG would have provided a safe path along her entire route to the apron at Boardwalk Hall. See 204 N.J.Super. at 617, 499 A.2d 1026. Accordingly, we perceive no just public policy consideration or sound basis to create another exception to the general rules governing premises liability and expand the duty established by our current case law to hold SMG liable under the circumstances of this case.
We are also satisfied that Judge Nugent properly assessed the record in the light most favorable to plaintiffs. He correctly concluded that plaintiffs have not demonstrated any material issues of fact as to SMG's actions on the day in question and that there is no supporting testimony or evidence that SMG created or caused the snow patch where plaintiff fell. R. 2:11-3(e)(1)(A) and (E). Reconsideration was also properly denied. See Fusco v. Board of Educ. of Newark, 349 N.J.Super. 455, 462, 793 A.2d 856 (App.Div.2002); D'Atria v. D'Atria, 242 N.J.Super. 392, 401, 576 A.2d 957 (Ch. Div.1990).
Affirmed.
NOTES
[1] Plaintiff will refer to Kathryn, as her husband filed a per quod claim.
[2] At the time of the deposition, Tesone was the General Manager of Boardwalk Hall.
[3] The trial court declined to address the issue of the impact of the State's Tort Claims Act immunity on SMG's maintenance liability, as it was not timely raised.
[4] In the context of this discussion we are considering SMG as the commercial landowner even though it is only a manager for the owner of Boardwalk Hall, the State of New Jersey. The record does not reflect the terms of SMG's contract and whether it receives a direct pecuniary benefit from attendance at the shows at Boardwalk Hall.