57 A.3d 11

ARLENE KANDRAC AND RICHARD KANDRAC, H/W, PLAIN-
TIFFS–APPELLANTS, v. MARRAZZO'S MARKET AT ROBBINS-
VILLE, DEFENDANT–RESPONDENT, AND FOXMOOR ASSO-
CIATES, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 1, 2012—Reargued October 23,
2012—Decided November 5, 2012.

Before Judges MESSANO and ESPINOSA (May 1, 2012).

Before Judges MESSANO, ESPINOSA and KENNEDY (Oct. 23, 2012).

*Jerrold Kamensky* argued the cause for appellants (*Kamensky, Cohen & Riechelson,* attorneys; *Mr. Kamensky* and *Kristin Teufel,* on the briefs).

*Brad M. Weintraub* argued the cause for respondent (*Weiner Lesniak LLP,* attorneys; *Adam Kenny,* of counsel and on the brief; *Mr. Weintraub,* on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

This appeal from an order granting summary judgment concerns whether a commercial tenant in a multi-tenant shopping center owes a duty to its patrons to maintain an area of the parking lot that the landlord is contractually obligated to maintain. We hold that, as a general rule, the commercial tenant does not have such a duty and affirm.

In reviewing the order that granted summary judgment, we view the facts with all reasonable inferences drawn in favor of plaintiffs. *See R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

Defendant Marrazzo's Market at Robbinsville (Marrazzo's or defendant) is one of thirty-six stores in a shopping center, The Shoppes at Foxmoor (The Shoppes). The shopping center is owned by co-defendant Foxmoor Associates, LLC (Foxmoor), a subsidiary of Pettinaro Enterprises (Pettinaro or the landlord).[1] Plaintiff Arlene Kandrac[2] was injured when she fell in the shopping center's parking area after leaving defendant's store on February 28, 2007. It was a nice day; there was no rain or ice.

---

[1] Plaintiffs settled all claims against Foxmoor for $721,000 after participating in binding arbitration.

[2] Plaintiff's husband, Richard Kandrac, also asserted a per quod claim. Throughout the opinion, "plaintiff" refers to Arlene Kandrac.

Plaintiff testified that after she and her husband left Marrazzo's, she proceeded to the crosswalk to cross the roadway to the parking area. Although plaintiff was uncertain about some of the details regarding the scene in the parking lot, she testified that it was after she moved around a car that her "foot caught a hump." She tripped, fell forward onto her face and suffered injuries. During the course of her deposition, plaintiff was shown a photograph and circled the location where she fell. The fall occurred approximately two feet from the cross walk in a roadway that separates the stores from the area where cars are parked.

Plaintiff filed a complaint against Marrazzo's and Foxmoor, alleging that their negligence caused her injuries. Marrazzo's and Foxmoor each filed claims against the other for contribution and indemnification.

Marrazzo's lease included the following provision:

The LESSOR covenants and agrees that it shall maintain the common areas of the shopping center in good operating condition and repair ... [and t]he LESSOR shall resurface the sidewalk, parking and driveway areas when the same shall be reasonably necessary together with the restriping of the parking areas.

The lease defined "common areas" as "employees' parking areas, service roads, loading facilities, sidewalks, and customers' parking areas[.]"

Earl Sweeney, the site manager for Pettinaro, testified that his responsibilities included "oversee[ing] the [minor] maintenance of the shopping center, cleaning and maintenance." Asked if the tenants had any responsibility to repair or maintain the parking lot, Sweeney testified, "From what I'm led to believe, they don't have any responsibility to repair the parking lot." He testified further that Foxmoor was responsible for making repairs to the parking lot.

Sweeney testified that if he saw a problem such as cracks in the pavement, he would report it to Daylene Maxwell, a property manager for Pettinaro. Maxwell would, in turn, report such a problem to the regional manager of Pettinaro. In addition, Maxwell, who was specifically responsible for inspecting the condition

of The Shoppes, was on-site approximately every two weeks. Alfred Cooper, a maintenance worker for Pettinaro, worked at The Shoppes five days a week, and testified that he inspected the parking lot each day to search for potholes.

Martin Reeser, the owner of Marrazzo's, testified that his store manager's repair and maintenance responsibilities included inspecting the parking area for danger and safety issues. Reeser testified that he also would check for safety issues when he visited the store. If an issue was discovered, it was reported to Pettinaro's property manager.

Marrazzo's filed a motion for summary judgment, which plaintiffs opposed. The motion judge granted summary judgment, relying upon *Holmes v. Kimco Realty Corp.*, 598 *F.*3d 115 (3d Cir.2010) and reasoning that, as a commercial tenant in a multi-tenant facility, Marrazzo's owed no duty of care to its invitee for an injury that occurred in the common area of the shopping center.

In this appeal, plaintiffs argue that the motion judge erred because: Marrazzo's had a duty to provide safe ingress and egress from its store to the parking lot for its patrons; there were genuine issues of fact that precluded summary judgment; and the judge improperly relied upon a decision by a federal court that interpreted New Jersey law. After carefully reviewing the record and arguments in light of the applicable legal principles, we are unpersuaded by these arguments.

In our review of the order granting summary judgment, we must review the facts in the light most favorable to the non-moving party, *R.* 4:46-2(c), and apply the same standard of review as the trial court. *Bauer v. Nesbitt,* 198 *N.J.* 601, 605 n. 1, 969 *A.*2d 1122 (2009). Summary judgment is appropriate if the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of

law." *R.* 4:46–2(c); *see also Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

The central issue in this appeal is whether Marrazzo's had a duty to plaintiff to maintain the parking area where she fell. In its oral decision, the trial court relied upon a federal appellate decision, *Holmes, supra,* 598 *F.*3d 115, in which the Court of Appeals predicted that our Supreme Court would decline to impose a duty on a tenant in a multi-tenant shopping center to maintain the parking lot owned by the landlord. *Id.* at 124. Plaintiffs argue that the court erred in relying upon this case as authority. We need not determine whether the Third Circuit's prediction is correct, however, because appeals are taken from judgments or orders and not from the court's reasoning. *State ex rel. J.A.,* 195 *N.J.* 324, 355 n. 2, 949 *A.*2d 790 (2008); *see also Glaser v. Downes,* 126 *N.J.Super.* 10, 16, 312 *A.*2d 654 (App.Div. 1973), *certif. denied,* 64 *N.J.* 513, 317 *A.*2d 726 (1974). The issue as to whether Marrazzo's had a duty to maintain the parking area where plaintiff was injured is a question of law, *Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 572, 675 *A.*2d 209 (1996), which we review de novo, without deference to the motion judge's conclusions. *Zabilowicz v. Kelsey,* 200 *N.J.* 507, 512–13, 984 *A.*2d 872 (2009).

In *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 625 *A.*2d 1110 (1993), the Supreme Court described the principles generally applicable to a determination of whether a duty of care exists:

Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.

[*Id.* at 439, 625 *A.*2d 1110 (citations omitted).]

Our analysis is to be both "very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." *Ibid.*

The line of cases expanding the duty of the commercial landowner began with the Supreme Court's formulation of a new rule in *Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146, 432 *A.*2d 881 (1981), that imposed a duty upon commercial landowners to "maintain[ ] in reasonably good condition the sidewalks abutting their property and [made the landowners] liable to pedestrians injured as a result of their negligent failure to do so." *Id.* at 157, 432 *A.*2d 881. The holding was based upon an assessment of various factors relating to public policy that remain relevant to a consideration of whether a duty should be imposed here. The Supreme Court later summarized those reasons as follows:

> First, commercial entities have considerable rights over adjacent sidewalks . . . and imposing a duty associated with those rights was not arbitrary[.] . . . [J]ustification for the change in liability for commercial property owners was rooted in the fact that the former rule undermine[d] basic goals of tort law in two ways: it left many innocent victims without recourse, and it gave no incentive to landowners to care for their sidewalks and prevent injuries. And, in recognition of the commercial nature of the defendant, we found it arbitrary to allow a plaintiff-invitee to recover for injuries sustained within a business establishment, but to deny her recovery if the injury happened on the negligently maintained sidewalk only a few feet outside the business's door. It was of considerable consequence that the new rule was being adopted only for commercial property owners, for our decision highlighted that the imposition of additional insurance premiums and maintenance expenses will be treated as one of the necessary costs of doing business, regardless of the size of the business.
>
> [*Luchejko v. City of Hoboken*, 207 *N.J.* 191, 202–03, 23 *A.*3d 912 (2011) (internal citations and quotation marks omitted).]

The duty of a commercial landowner was further extended beyond the abutting sidewalk to a parking lot across the street in *Warrington v. Bird*, 204 *N.J.Super.* 611, 499 *A.*2d 1026 (App.Div. 1985), *certif. denied*, 103 *N.J.* 473, 511 *A.*2d 653 (1986), in which we held that

> when a business provides a parking lot across the roadway from its establishment, the duty of the proprietor to exercise reasonable care for the safety of its patrons extends to conditions obtaining at the parking lot and requires that the patrons not be subjected to an unreasonable risk of harm in traversing *the expected route* between the two locations.
>
> [*Id.* at 617, 499 *A.*2d 1026 (emphasis added).]

We described the "critical element" in determining liability to be "the expectation of the invitee that safe passage will be afforded

from the parking facility to the establishment to which they are invited." *Ibid.* We reasoned,

> Commercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. The benefiting proprietor should not be permitted to cause or ignore an unsafe condition in that route *which it might reasonably remedy*, whether the path leads along a sidewalk or across a roadway.
>
> [*Ibid.* (emphasis added).]

Thus, two significant factors in imposing the duty upon the landowner in Warrington were that the location of the injury was in "the expected route" the proprietor's patron would take to the business and that the condition was one that the proprietor "might reasonably remedy."

The ruling in *Stewart* was extended to commercial tenants in *Antenucci v. Mr. Nick's Mens Sportswear,* 212 *N.J.Super.* 124, 514 *A.*2d 75 (App.Div.1986). We observed that the public policy considerations found in *Stewart* were equally valid "whether the defendant is the owner or an exclusive occupant of the commercial property." *Id.* at 128, 514 *A.*2d 75. In addition to the public's right to use the sidewalk and the "harshness of the non-liability rule," we noted that the "resulting incentive to keep the abutting sidewalk in good repair applies to either the property owner or the lessee in exclusive possession[.]" *Ibid.*[3]

Those considerations do not apply, however, to tenants in a multi-tenant mall that do not have control or maintenance responsibilities for a common area and have no contractual obligation to maintain such areas. *See Barrows v. Trs. of Princeton Univ.,* 244 *N.J.Super.* 144, 148, 581 *A.*2d 913 (Law Div.1990); *see also Holmes, supra,* 598 *F.*3d at 123 (observing that, although a shopping center tenant derives a benefit from the parking lot and a duty would incentivize the tenant to prevent dangerous condi-

---

[3] Plaintiff contends that Marrazzo's is an anchor store and therefore should carry a duty commensurate to that of a stand-alone store with responsibility for its own parking lot. We disagree. The size and relative prominence of a commercial tenant in a multi-tenant commercial shopping center bear no relationship to the policy considerations relevant to this inquiry.

tions, "countervailing policy considerations weigh more heavily against imposition of a duty").

Plaintiffs rely upon *Monaco v. Hartz Mt. Corp.*, 178 *N.J.* 401, 840 *A.*2d 822 (2004), for the proposition that Marrazzo's owed a duty to provide safe ingress and egress from its place of business to the area in the parking lot where the injury occurred. In *Monaco*, the Supreme Court recognized that "our courts have extended *a commercial landowner's duty*, when warranted by the facts, to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property." *Id.* at 415, 840 *A.*2d 822 (emphasis added). Monaco did not address a similar extension of duty to commercial tenants and, in particular, a commercial tenant in a multi-tenant property.

Guided by the principles in *Hopkins* and *Stewart*, we address the relevant facts here. It is undisputed that plaintiffs were patrons of Marrazzo's on the day of the accident, and therefore business invitees. The nature of the risk was that a patron would fall as a result of a defect in the parking area. Plaintiff stated "[t]here was an indentation, very uneven area[.]" Her foot "caught on a lip or a hump or something that was there." According plaintiff all legitimate inferences from the evidence, we assume that the risk of injury posed by the condition of the parking area would have been observable in the exercise of a reasonable inspection.

The question then becomes whether policy reasons identified in *Stewart* as warranting an extension of the commercial landowner's duty support an extension of Marrazzo's duty here. Those reasons included: (1) a recognition of the "considerable interest in and rights" the commercial landowner had regarding the property in question, *Stewart, supra,* 87 *N.J.* at 151, 432 *A.*2d 881; (2) whether imposing a duty associated with those rights would be arbitrary, *id.* at 158, 432 *A.*2d 881; (3) whether a failure to impose the duty would leave innocent victims without recourse, *id.* at 155, 432 *A.*2d 881; (4) a recognition that the imposition of liability would give an incentive to landowners to care for the property in

question, *ibid.;* (5) whether the proximity of the place where the injury occurred to the business establishment would render a failure to impose a duty arbitrary, *id.* at 156–57, 432 *A.*2d 881; and (6) a recognition that the commercial landowner would treat the costs associated with additional insurance premiums and maintenance as one of the necessary costs of doing business, *id.* at 160, 432 *A.*2d 881.

■   Plaintiffs continue to assert that Marrazzo's duty to ensure safe passage for the ingress and egress of its patrons is implicated here and that an issue of fact exists regarding the location of her injury.   However, the record fails to show that the injury occurred in a location necessary to such ingress or egress.   Plaintiff was not injured on the sidewalk abutting Marrazzo's or in the crosswalk that identified a route from the shopping center across a roadway to the parking area.   She testified she was injured after she left the crosswalk and moved around a car in the parking lot.   Once she left the crosswalk, there was no defined route to or from Marrazzo's and plaintiff could have taken any number of paths to her car.   Even affording plaintiff all reasonable inferences, the record shows that the injury did not occur in an area within Marrazzo's control.   Further, the record fails to show that plaintiff's injury occurred in a location in such close proximity to Marrazzo's establishment as to make a distinction in liability arbitrary.

■   When a commercial landowner's duty was extended to abutting sidewalks, an important consideration to the Court was that "owners of abutting property are in an ideal position to inspect sidewalks *and to take prompt action to cure defects." Id.* at 158, 432 *A.*2d 881 (emphasis added).   Marrazzo's is not in such an "ideal position."   We recognize that the covenant in the lease regarding the landlord's obligation to maintain the common areas of the shopping center in good operating condition and repair does not relieve Marrazzo's of all duties to its customers regarding ingress and egress.   *See O'Connell v. N.J. Sports & Exposition Auth.,* 337 *N.J.Super.* 122, 128–29, 766 *A.*2d 786 (App.Div.2001),

*certif. denied,* 168 *N.J.* 293, 773 *A.*2d 1156 (2001); *Jackson v. K-Mart Corp.,* 182 *N.J.Super.* 645, 651, 442 *A.*2d 1087 (Law Div. 1981); *see also Holmes, supra,* 598 *F.*3d at 123 n. 5. However, the assignment of responsibilities in the lease, within the context of a multi-tenant shopping center, also impacts the scope of Marrazzo's ability to address conditions in the parking lot.

The lease covenant squarely assigns the duty to maintain the area where plaintiff was injured to the landlord. Consistent with that allocation, the testimony of the witnesses showed that, while Marrazzo's employees made periodic inspections of the parking area, all repair and maintenance issues were referred to the landlord. The landlord retained the obligation to make such inspections, did so, and performed all necessary repairs and maintenance. The record does not establish any "rights" that Marrazzo's had over the area where the injury occurred that conflicted with the allocation of responsibility in the lease covenant.

■ The ability of the proprietor to "reasonably remedy" an unsafe condition is a significant factor in determining what duty, if any, should be imposed. *See Monaco, supra,* 178 *N.J.* at 419, 840 *A.*2d 822 ("What is important in all of this is that Monaco is not attempting to hold Hartz responsible for something over which it had no control, *but only for negligently failing to take such measures as were within its power* and duty to protect its invitees from reasonably foreseeable danger.") (emphasis added); *Pote v. City of Atl. City,* 411 *N.J.Super.* 354, 368–69, 986 *A.*2d 680 (App.Div.), *certif. denied,* 202 *N.J.* 43, 994 *A.*2d 1039 (2010) (summary judgment in favor of property manager held appropriate where, inter alia, no evidence presented that the commercial enterprise had the ability and authority to shovel, salt or place warning signs on the boardwalk owned and controlled by municipality); *Warrington, supra,* 204 *N.J.Super.* at 617, 499 *A.*2d 1026 (describing a proprietor's duty to exercise reasonable care for its patrons' safety in traveling from a parking lot across the roadway from its establishment as a duty to address an "unsafe condition in

that route *which it might reasonably remedy* [.]*") (emphasis added); *Barrows, supra,* 244 *N.J.Super.* at 148–49, 581 *A.*2d 913 (denying summary judgment to merchant that had control over awning where ice had melted and created icy patch on sidewalk while granting summary judgment to other tenants).

Because it is clear that the commercial landowner was liable for any negligence in maintaining the parking area, no innocent victim is left without recourse if a corresponding duty is not imposed upon Marrazzo's. Moreover, the assignment of such a duty on individual tenants in a multi-tenant commercial property might well be counter-productive. As the Court of Appeals observed in *Holmes,*

> [T]he imposition of a duty on the tenants would result in duplicative effort and interference with the landlord's maintenance program. It is not hard to imagine the confusion, and perhaps danger, that could ensue if snow plows and salt trucks hired by the landlord, Lowe's, Bally's Total Fitness, and Mattress Giant all attempted to maintain the parking lot at the same time. The thought of the same occurring in a shopping center with twenty or more tenants highlights the absurdity of such a shared duty.
>
> [*Holmes, supra,* 598 *F.*3d at 124.]

In addition, the extension of such a duty "would lead to uncertainty with respect to the areas of the parking lot for which each tenant is responsible" and "encourage 'shotgun' litigation ... where the customer sued every store at which he had browsed or purchased an item prior to his fall." *Ibid.* Such uncertainty would also make it difficult to reasonably predict appropriate additional insurance premiums and maintenance costs the tenant would assume, making it less feasible for the tenant to spread the burden of liability as part of the "costs of doing business." *Stewart, supra,* 87 *N.J.* at 160, 432 *A.*2d 881.

■ We are therefore satisfied that the application of the relevant legal principles and policy considerations to the facts of this case do not provide a basis for the imposition of a duty and corresponding liability upon Marrazzo's here. The determination whether a duty exists remains a fact-sensitive issue. However, we hold that, as a general rule, when a commercial tenant in a multi-

tenant shopping center has no control or contractual obligation to maintain a parking lot shared with other tenants, the common law does not impose a duty upon the tenant to do so. We are further satisfied that the remaining arguments raised by plaintiffs lack sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)–1(E).

Affirmed.