**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3655-22

VITO COLLUCCI and LUCILLE
COLLUCCI, as husband and wife
and individually,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

COSIMA CASSESE, CASSESE'S
ENTERPRISE, INC., TUYEN KIM
NGUYEN, GOLDEN STYLES
BARBER STUDIO, PL
LANDSCAPING, SANG HWANG,
and JEONG HE PAK,

      Defendants,

and

REALTY EXECUTIVES, NIROAL,
LLC, and KYONG HUI NAM KOONG,

      Defendants-Respondents/
      Cross-Appellants,

and

MY SISTER'S GOURMET DELI,

Defendant-Respondent.

Argued November 20, 2024 – Decided February 5, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2221-18.

Joseph M. Cerra argued the cause for appellants/cross-respondents (Lynch Law Firm, PC, attorneys; Joseph M. Cerra, on the briefs).

Murray A. Klayman (Murray A. Klayman, PC) argued the cause for respondent/cross-appellant Realty Executives.

Walter F. Kawalec, III, argued the cause for respondent/cross-appellant Niroal, LLC (Marshall Dennehey, PC, attorneys; Walter F. Kawalec, III, and Timothy J. Jaeger, on the briefs).

Michael F. Lynch argued the cause for respondent/cross-appellant Kyong Hui Nam Koong (Law Offices of Linda S. Baumann, attorneys; Michael F. Lynch, on the brief).

Anthony R. Fiore, Jr., argued the cause for respondent My Sister's Gourmet Deli (Gage Fiore, LLC, attorneys; Anthony R. Fiore, Jr., of counsel and on the brief).

PER CURIAM

In this matter arising out of plaintiff's, Vito Collucci[1], fall on ice and snow while walking towards a restaurant, plaintiff instituted suit against the restaurant as well as other tenants located at the strip mall. The court granted summary judgment to defendants My Sister's Gourmet Deli, LLC i/p/a My Sister's Gourmet Deli (Sister's Deli); Kyong Nam Koong i/p/a Kyong Hui Nam Koong (Koong); Robert Arcucci Niroal LLC d/b/a Amore Ristorante i/p/a Niroal, LLC (Amore); and Real Estate Consultants, LLC d/b/a Realty Executives (Realty Executives) (collectively defendants), finding they were not responsible for snow and ice removal in the area where plaintiff fell. Because defendants did not have a contractual or common law duty to maintain the location where plaintiff fell, we affirm. As a result, we need not address the protective cross-appeals filed by Realty Executives, Amore, and Koong.

On March 16, 2017, plaintiff slipped on snow and ice at a retail strip mall owned by defendant Cassese Enterprises, Inc. (Cassese). Plaintiff stated he was eating dinner at Amore with his family. He parked in the parking lot in front of the building.

---

[1] Lucille Collucci asserted a per quod claim. We refer to both plaintiffs collectively as "plaintiff."

A-3655-22

After dinner, plaintiff went to his car in the parking lot to retrieve a cake he brought for dessert. However, he did not re-enter the restaurant through the front door but instead walked past the restaurant to the end of the building, around the corner and toward the back where he intended to enter Amore's kitchen through a back door. Plaintiff stated he slipped on ice while "walking in the parking lot" as he was near the back door of Amore bringing the cake to the kitchen. During plaintiff's deposition, he marked on a photograph the location of his fall and indicated the path he was taking prior to the fall.

Defendants were commercial tenants of the property and had similar lease agreements with Cassese, which stated, in pertinent part:

> **3. Care and Maintenance of Premises.** Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear expected. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, [and] structural foundations, . . . which shall be maintained by Lessor. Lessee shall also maintain in good condition such portions adjacent to the premises, such as sidewalks, driveways, lawns and shrubbery, which would otherwise be required to be maintained by Lessor.

A-3655-22

. . . .

> **17. Common Area Expenses.** In the event the demised premises are situated in a shopping center or in a commercial building in which there are common areas, Lessee agrees to pay his pro-rata share of maintenance, taxes, and insurance for the common area.
>
> [(emphasis added).]

Amore also signed a lease rider with Cassese, that provides, in pertinent part:

> 17. COMMON AREA EXPENSES. Lessee herein agrees that he shall be responsible to reimburse Lessor for the Lessee's proportionate share of the costs of lighting the parking lot, cleaning the parking lot[,] and all common areas and snow removal for the parking lot and all common areas . . . .
>
> . . .
>
> . . . The common areas shall be subject to the exclusive control and management of the Lessor . . . .

Cosima Cassese[2], as representative of Cassese and owner and landlord of the strip mall, testified during her deposition that it was her responsibility to ensure no dangerous snow or ice conditions existed in the parking lot of the strip mall. She further stated, under the lease, she took "care of the parking lot. If

---

[2] Cosima was dismissed from the matter in 2021. We refer to her by her first name to avoid confusion with the corporate entity.

there is any problem, [the tenants] will call me. And they never did it. Nobody did it."

To carry out this responsibility, Cassese hired PL Landscaping to clear snow and ice at the shopping center. Cosima described the instructions she gave PL Landscaping regarding snow removal:

> To make sure all the parking lot is clean, and all the snow is put on the side. Because I have parking spaces, so everything [should] go on the side. Make sure it is salted, the sidewalk, in between the bumps, to clean. People get out of the car, they have to come through the bumps to go on the sidewalk. And salt it. And he did it all the time, you know. Before, he did it with no problem at all.

Cosima also advised defendants to call Cassese if they saw any snow or ice issues. No one reported any snow or ice issues on the days surrounding plaintiff's fall. Cosima further testified that she did not expect defendants to clear snow and ice from the sidewalk in front of their respective premises. However, she stated defendants had salt and shovels to use when needed.

Several weeks after plaintiff's fall, his counsel retained an investigator to "[a]scertain if there ha[d] been any complaints concerning the condition of the parking lot prior to [plaintiff's] accident." The report was submitted on July 1, 2017, detailing the incident. The complaint was filed a year later.

6

In the initial July 2018 complaint, plaintiff sued Cassese, fictitious parties "who had control of the [strip mall] premises," and an entity that was later dismissed. Cassese filed an answer and a third-party complaint against PL Landscaping. Plaintiff later amended the complaint to add PL Landscaping as a direct defendant.

In May 2019, plaintiff sought leave to file a second amended complaint to add the tenants of the strip mall, including Realty Executives, Amore, and Sister's Deli. The court granted the motion and plaintiff filed a second amended complaint in June.

In their answers to the second amended complaint, Realty Executives and Amore asserted the action was barred by the statute of limitations. Cassese and Sister's Deli also raised this affirmative defense in their answers to a third amended complaint.

Thereafter, Reality Executives and Amore moved for summary judgment asserting the action against them was barred by the statute of limitations under N.J.S.A. 2A:14-2. Koong moved to dismiss the complaint in lieu of an answer for failure to state a cause of action under Rule 4:6-2(e). Plaintiff opposed the motions, asserting he was unable to obtain the required information about the tenants and the leases prior to the expiration of the statute of limitations.

A-3655-22

In an oral decision denying the summary judgment motions, the court stated:

> [T]he reason I'm denying the motions . . . is because . . . I wrestled with this for a long time . . . because I have some real problems with how the plaintiff handled this. But at the end of the day I think that the plaintiff was misled by the landlord. I don't know whether it was intentional or not.
>
> But you have a situation where there's discovery that has taken place. And the landlord tells the plaintiff that there are no other parties who might be responsible. Yes, the plaintiff knew the identities of these tenants. But I cannot fault the plaintiff for not including these defendants if he didn't really have a theory of liability against them. And at that point in time . . . he knew the identities of . . . all of the stores in the strip mall, but when asked, the landlord said there's nobody else that's responsible. And then the plaintiff began the process of attempting to get those leases. The landlord was not forthcoming with the leases. It required motion practice and repeated efforts to get the leases.
>
> Ultimately[,] he got some leases that seemed to demonstrate that there might be some responsibility on the part of the tenants. And I think that . . . the efforts that were made were sufficient efforts. Although not great, not perfect, they were sufficient efforts to identify whether or not there was a cause of action. And for that reason I'm denying the motions.

The court denied Koong's motion "primarily for the same reasons."

Thereafter, defendants moved for summary judgment, asserting they did not owe plaintiff a contractual or common law duty regarding the strip mall

8

common area where plaintiff fell.  Koong, Amore, and Realty Executives also reasserted their arguments that the action was filed against them after the expiration of the statute of limitations.  Plaintiffs subsequently cross-moved for partial summary judgment as to liability on contractual and common law grounds.

In an oral decision, the court found defendants had no contractual duty to maintain or remove snow and ice from the parking lot.  The court reviewed the lease terms and rent rider and found "the parking lot falls under the definition of common area and that Cassese was responsible for the maintenance of the common areas.  As such, Cassese was responsible for any snow or ice removal in the parking lot."

In viewing the photographs, the court found that "the area where [plaintiff] allegedly fell is neither a sidewalk nor a walkway.  It is a part of the parking lot blacktop on the side of the building, which falls under the definition of common areas."  The court noted Cosima's testimony regarding her acceptance of responsibility for maintaining the common areas and stated:  "Under the lease agreements, the tenants were required to pay their pro rata share of common area maintenance fees.  The common areas and their maintenance were under the exclusive control of the lessor landlord Cassese and were its responsibility."

9

The court found defendants did not owe plaintiff a contractual duty as "the plain and unambiguous language requires the tenants to maintain the areas in front of their stores and nothing more. It is apparent that the landlord intended to exercise control over common areas, such as parking lots, by reserving the right to charge for common area maintenance."

The court then considered plaintiff's contention that defendants owed him a common law duty to maintain the parking lot. The court stated:

> [T]he facts are quite similar to the facts in Kandrac.[3] The tenants are in a multi-tenant shopping center and share a common area parking lot. As previously discussed, the tenants were under no contractual duty to maintain the common areas. The common areas are under the exclusive control of Cassese.
>
> [Plaintiff] fell in an area of the parking lot that was not on the leased premises of any tenant nor on the sidewalk that abutted the tenants' storefronts. He was going to the rear of the restaurant, which is not a defined route to any of the tenants' premises. It is not even in an area that any of the tenants would be aware that ice and snow were . . . located. It was on the right side of the building at the other end where the tenant Realty Executives was located, and no[ne of its] employees had been on the premises that day.
>
> It is clear, based on case law, that the tenants did not owe a duty to maintain the parking lot comprising

---

3 Kandrac v. Marrazzo's Mkt. at Robbinsville, 429 N.J. Super. 79 (App. Div. 2012).

the area where the fall occurred or . . . to . . . clear [the] snow and ice.

> Cassese undertook the duty to remove the snow and ice by hiring PL Landscaping and considered the area where the fall occurred to be part of the common area.

> There is no genuine issue of any material fact challenged, under either contractual or common law. The tenant's motions for summary judgment . . . are hereby granted and plaintiffs' partial motion for summary judgment against the tenants is denied.

In considering defendants' renewed statute of limitations arguments, the court stated:

> The tenants claim that . . . plaintiff engaged an investigator in 2017 who had information regarding the tenancy of the strip mall, but failed to reveal this information to [the judge who heard the first round of summary judgment motions]. They waited until now to file this motion without detailing when they received this information, thus they have not demonstrated that the [c]ourt expressed its decision based upon a palpably incorrect or irrational basis or that it was obvious that the [c]ourt either did not consider or failed to appreciate the significance of probative competent evidence. Moreover, any motion for reconsideration should have been timely filed before [the first motion judge] upon notice that the plaintiff had the names of the tenants prior to date explained during oral argument.

> Thus, the motions for summary judgment on statute of limitations grounds are hereby denied.

11

A memorializing order was entered on June 25, 2021. Plaintiff's subsequent motion for reconsideration of the summary judgment order was denied.

In February 2023, trial began against Cassese and PL Landscaping. Plaintiff settled its claims with Cassese prior to a verdict. The jury found no liability against PL Landscaping.

On appeal, plaintiff contends the trial court erred in granting defendants summary judgment because they had both a contractual and common law duty to clear the snow and ice in the area of plaintiff's fall. In their respective cross-appeals, Realty Executives, Amore, and Koong contend the court erred in not dismissing the complaint under the statute of limitations.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). See R. 4:46-2(c).

To sustain a negligence action, a plaintiff must establish the defendant owed it a duty of care, breached the duty, that the breach proximately caused the

accident and actual damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015). Whether a duty exists is a question of law to be determined by the court. Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 56 (App. Div. 1994).

We begin with plaintiff's contention that defendants owed him a contractual duty under Article 3 of the lease agreement to clear snow and ice from the area where he fell. Our review of an interpretation of a contract, in the absence of a factual dispute, is de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018).

After reviewing the photographs and plaintiff's testimony, the trial court found the area where plaintiff fell was not a sidewalk or walkway but rather "a part of the parking lot blacktop on the side of the building, which falls under the definition of common areas." The photographs support the court's finding. Plaintiff was walking on the black asphalt parking lot towards the back door of Amore when he fell. It is clear under the lease that the parking lot was a common area under the exclusive control of the landlord. In addition, Cassese agreed it was its obligation to remove snow and ice from the parking lot and the sidewalk and it hired PL Landscaping to fulfill that obligation. Defendant did not have a contractual duty to remove snow and ice from the area of plaintiff's fall.

Turning to the issue of whether defendants owed plaintiff a common law duty, we are satisfied they did not. In Kandrac, we considered similar circumstances where the tenants were in a multi-tenant shopping center and shared a common area parking lot. 429 N.J. Super. at 81. The lease did not impose any contractual duty on the tenants to maintain the common areas. Id. at 82. We noted the landlord was responsible for any negligence in maintaining the parking lot. Id. at 90-91. Therefore, the plaintiff was not left without recourse.

Similarly, here, plaintiff instituted suit against Cassese and settled its claims after commencing trial. We are satisfied that Kandrac is the controlling law in these circumstances and reiterate, that, "as a general rule, when a commercial tenant in a multi-tenant shopping center has no control or contractual obligation to maintain a parking lot shared with other tenants, the common law does not impose a duty upon the tenant to do so." Ibid.

In light of our conclusion that the trial court properly granted defendants summary judgment, the cross-appeals are moot.

Any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                    A-3655-22